In Re: Condemnation by the Redevelopment Authority of the City of Bethlehem of 120-128 West Union Boulevard (Rear), Bethlehem, Northampton County, Pennsylvania, Property of Abraham Miller and Minnie Miller.

Abraham Miller and Minnie Miller, Appellants.

Argued October 6, 1980, before President Judge CRUMLISH and Judges BLATT and CRAIG, sitting as a panel of three.

*Thomas J. Maloney, Maloney, Danyo, Goodman, Hensel & Center,* for appellants.

*Michael E. Riskin,* for appellee, Redevelopment Authority of the City of Bethlehem.

*Jackson M. Sigmon,* for appellee, City of Bethlehem.

OPINION BY JUDGE BLATT, December 30, 1980:

The appellants, Abraham and Minnie Miller, seek review of an order of the Court of Common Pleas of Northampton County which sustained preliminary objections filed by the Redevelopment Authority of the City of Bethlehem (Authority) in opposition to the appellants' petition for an appointment of viewers. Their petition had alleged a *de facto* condemnation of their property by the Authority.

In January of 1972, the City of Bethlehem and the Authority instituted a redevelopment project known as Northside Urban Renewal Area No. 1 and the appellants were notified that their property[1] was scheduled to be acquired as a part of that project. Subsequently, the Authority acquired numerous other properties in the redevelopment area, but informed the appellants by letter dated December 22, 1975, that, due to a shortage of funds, their real estate and the

---

[1] The property in question is a lot approximately 60' x 150' in size upon which stands a four and one-half story building that the appellants lease to Miller Wholesale Paper Company, a sole proprietorship owned by the appellant, Abraham Miller.

equipment thereon, which had been appraised at $125,000 and $25,000 respectively, would not be taken. Thereafter, the Authority continued to acquire still other properties as part of the project, and the appellants' premises was officially deleted from the redevelopment plan in November of 1978. The project was finally closed out between January and March of 1979.

Appellants petitioned for an appointment of viewers alleging that the activities of the Authority amounted to a *de facto* condemnation of their property and a board of view was appointed by order of November 14, 1978. The Authority filed preliminary objections to the petition in December of 1978, an evidentiary hearing was held in May of 1979 and the lower court entered an order in December of 1979, sustaining the preliminary objections and dismissing the appellants' petition.

The appellants contend that the Authority through its then-executive director Augustine Concilio engaged in conduct that substantially deprived them of the use and enjoyment of their property and that they therefore suffered a compensable injury under Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e)[2]; *Conroy-Prugh Glass Co. v. Commonwealth of Pennsylvania,* 456 Pa. 384, 321 A.2d 598 (1974).

In order to establish a *de facto* taking the appellants must show that there are exceptional circum-

---

[2] Section 502(e) provides:

If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

stances which substantially deprive them of the use of their property. *Reingold v. Urban Redevelopment Authority of Pittsburgh,* 20 Pa. Commonwealth Ct. 266, 341 A.2d 915 (1975); *Petition of Cornell Industrial Electric, Inc.,* 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975). They argue that numerous facts in this case make their situation similar to that in *Cornell, supra:* inclusion of the appellants' property in an urban renewal area, widespread publicity about the acquisition of their property, negotiations for purchase (although here no actual offer was ever made), deterioration and vandalism of the appellants' property and neighboring premises, extended delay in formally deleting the property from the redevelopment plan and refusal by the Authority to certify to prospective buyers or renters that the appellants' premises would not be acquired. The appellants claim that they have been deprived of the use and enjoyment of their property in that it has deteriorated due to the redevelopment project and that they have been unable to sell or rent the property as a result of the Authority's failure to respond to requests for assurances that the property would not be taken.

Our scope of review in a case where the lower court has sustained preliminary objections to a petition for an appointment of viewers is limited to a determination as to whether or not the findings are supported by competent evidence or an error of law was committed. *Petition of Ramsay,* 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977). And, although no specific findings of fact were made here, we must affirm the lower court because we can find no evidence that the appellants were deprived of the use and enjoyment of their property.

A central fact in *Cornell, Reingold* and the leading case in this area, *Conroy-Prugh Glass Co. v. Com-*

*monwealth of Pennsylvania, supra,* was that the businesses which had operated on those properties had relocated or otherwise vacated the premises and that the owners were receiving no rental income and were consequently threatened with losing their properties at tax sales. The appellants here are in no such danger. For the entire period in question, Miller Wholesale Paper Company occupied this property, continued to do business thereon and paid rent to the appellants.[3] Although the Authority's refusal to respond to inquiries as to the status of the property may arguably have deterred purchasers or new renters, this passive interference does not rise to the level of the substantial deprivation of use and enjoyment which our Supreme Court has required in order to constitute a taking under Section 502(e). *Conroy-Prugh Glass Co. v. Commonwealth of Pennsylvania, supra.*

The appellants additionally claim that they have been deprived of the use of the top two floors of their four-story building as a result of the representations and activities of Mr. Concilio and the Authority subsequent to the December 22, 1975 letter which notified the Millers that their property would not be taken. They argue that Mr. Concilio told the owner of neighboring land that the appellants' property would be acquired and the building razed. Furthermore, they allege (and Mr. Concilio denies) that, upon being informed by them in 1976 that the roof of their building was leaking, Mr. Concilio told them, "Don't do anything about it", "You won't get any more for it" and "Don't fix it up. We're going to take it." The appellants claim that they justifiably relied on this statement that they would not receive

---

[3] In fact, from 1975-78 the rental payments increased from $6,000 to $12,000.

additional compensation if they added a new roof and, as a result, the roof of the building deteriorated to such a degree as to render the third and fourth floors unusable. The law is clear, however, that the owner of property must bear any loss prior to condemnation if the physical deterioration of a building over which he has reasonable control affects the fair market value of the premises. Section 604 of the Eminent Domain Code, 26 P.S. §1-604. There is no question that the appellants at all times here had immediate and complete control of their property and, even assuming that Mr. Concilio made the statements which the appellants claim, their inaction was solely their own decision and cannot be attributed in any way to the Authority. As this Court stated in *County of Allegheny v. Church of Jesus Christ*, 14 Pa. Commonwealth Ct. 510, 514, 322 A.2d 803, 805 (1974):

> We cannot view mere advice to the Appellee as in any way affecting Appellee's rights under the Eminent Domain Code. The decision still remained with Appellee as to whether to continue with construction. Had Appellee chosen to continue to build, we see no reason why Appellee would not have been appropriately compensated.

*See also Perfection Plastics, Inc. Appeal*, 28 Pa. Commonwealth Ct. 396, 368 A.2d 917 (1977). Furthermore we must note that it is not in the public interest to encourage owners of property which is scheduled to be acquired as part of an urban renewal program to permit their premises to fall into disrepair. As is evidenced by this case, a property may at some point be designated to be acquired in a redevelopment project but the actual condemnation may not be finalized for some years, if ever. We cannot allow or encourage prospective condemnees to ignore the ap-

618

plicable health and safety codes during that interim period.

We will, therefore, affirm the order of the lower court.

ORDER

AND Now, this 30th day of December, 1980, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.