548 A.2d 653

Robert W. McGaffic et al. *v.* Redevelopment Authority of The City of New Castle and The City of New Castle. Redevelopment Authority of The City of New Castle, Appellant.

*Daniel I. Herman, Geer and Herman,* for appellant.

*Jonathan Solomon,* with him, *Robert E. Jamison,* for appellees.

OPINION BY JUDGE· SMITH, October 4, 1988:

Appellant Redevelopment· Authority of the City of New Castle (Authority) appeals from the October 8,. 1986 decision and order of the Court of Common Pleas of· Lawrence County in which the Court dismissed the Authority's preliminary objections to the petition for appointment of viewers and determined that a de facto taking had occurred of property belonging to Appellees, Robert W. McGaffic, Executor of the Estate of Eleanor L. McGaffic, deceased; Robert W. McGaffic, in his own right; George G. Love; and John W. Miller, individually and as executor of the Estate of Anita L. Miller, deceased. The Court .appointed a Board of Viewers to establish just compensation due Appellees.

The Authority raises three issues for review by this Court: Whether the trial court erred in finding that the Authority had effectuated a de· facto taking of the Centennial Building (Building) owned by Appellees; whether the trial court erred in failing to strike testimony of an expert witness for Appellees whose testimony was based in part on information not relied upon in the real estate profession; and whether the trial court erred in admitting speculative testimony of the expert witness.

Appellees own the four-story Building located· in downtown New Castle, Lawrence County. The Building was erected in 1925 and has been maintained since then as commercial rental property. The . trial court found that on July 1, 1966, the Authority applied to the federal government for urban renewal grant funds for a project which included acquisition of·the Building. On November 19, 1968; the Authority recorded with the Recorder of Deeds· its plan for development of the downtown area in New Castle, known as the Central Area Urban Renewal Project. The Authority conducted appraisals of the Building and other .properties to be acquired and thereafter entered into a contract on April

12, 1973 for sale of various properties with a private developer, New Castle Central Renewal Associates. The contract included a right of first refusal for the subject property. The Authority contended that problems developed from the beginning of the project and that in September 1973, the developer's right to the Building was removed from the contract. On September 14, 1978, the Building was formally removed from the development plan. N.T., p. 68, October 30, 1985 Hearing; N.T., p. 27, November 5, 1985 Hearing.

On October 31, 1978, Appellees filed a petition for appointment of viewers[1] to determine damages in a de facto taking of their property pursuant to Section 502(e) of the Eminent Domain Code of 1964 (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502(e). On November 20, 1978, the Authority filed preliminary objections which is the exclusive method under the Code of raising legal and factual objections to a petition for appointment of viewers which allege a de facto taking. *Holmes Protection of Pittsburgh, Inc. v. Port Authority of Allegheny County*, 90 Pa. Commonwealth Ct. 342, 495 A.2d 630 (1985). The Court may not dismiss preliminary objections under such circumstances without first conducting an evidentiary hearing to determine whether a de facto taking took place. *Id.; Beluschok v. Peoples Natural Gas Co.*, 79 Pa. Commonwealth Ct. 540, 470 A.2d 196 (1984). After seventeen evidentiary hearings, the trial court dis-

---

[1] Initially, Appellees included the City of New Castle as a party defendant along with the Authority. Subsequently, the City filed preliminary objections to the petition and by order and opinion filed April 29, 1980, Senior Judge J. QUINT SALMON sustained the City's preliminary objections and dismissed the City as a party defendant. Although the Authority included the City of New Castle as a party in its Notice of Appeal, reflected in the caption, we acknowledge that the City is not a party.

missed the preliminary objections, finding that a de facto taking had occurred on April 12, 1973, the date of contract between the Authority and the private developer, and that a board of viewers should be appointed to determine the amount of compensation due Appellees for the taking of their property. Hence, this appeal.

Where the trial court has dismissed preliminary objections to a petition for appointment of viewers, this Court's standard of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *City of Philadelphia v. Sorrentino,* 95 Pa. Commonwealth Ct. 236, 505 A.2d 373 (1986); *McCracken v. City of Philadelphia,* 69 Pa. Commonwealth Ct. 492, 451 A.2d 1046 (1982). In an eminent domain proceeding, the factfinder is to resolve conflicts in the evidence and not the reviewing court. *Harborcreek Township v. Ring,* 48 Pa. Commonwealth Ct. 542, 410 A.2d 917 (1980). Moreover, the trial court's findings of fact will not be disturbed if they are based upon substantial evidence. *Department of Transportation v. Pastuszek,* 55 Pa. Commonwealth Ct. 138, 422 A.2d 1223 (1980).

## I

Initially, the Authority argues that the trial court erred in finding a de facto taking of Appellees' property. The trial court, after reviewing the voluminous record which included testimony from eight witnesses and over 250 exhibits, found, *inter alia,* that on August 24, 1967, a public hearing was held regarding the planned redevelopment area; that location of this property was heavily publicized in the local press; and that the Authority announced a clear intention to acquire through eminent domain all the properties listed in the public notice, including the Building. Further, that subsequent to recording the Authority's plan, various em-

ployees of the Authority delivered written materials to the .owners and tenants of the Building explaining the eventual acquisition, and beginning in 1969, several tenants in the Building began to vacate due to the planned acquisition. On March 17, 1969, one of the owners was notified by letter from the Authority that the Building would be demolished by autumn of 1970, and in July of 1972, the Authority decided that the Building would not be acquired until 1974. By June 30, 1973, the Authority reported that it had acquired 96% of the properties within the project area and continued to publicly announce its intention to complete the entire project. Tenants in the Building were continuing to vacate and only one new tenant moved in, although advised by the Authority that the move could be temporary. Because of the loss of. rental income, the Building could no longer meet its expenses, and the owners were forced to dismiss their rental agent and personally maintain the Building which was ultimately scheduled for real estate tax· sale later stayed by court order.

In determining whether or·not a de facto taking·has occurred, the Court must first determine whether the entity charged with de facto taking was clothed with the power of eminent domain. *See Conroy-Prugh Glass Co. v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974); *Filbert Limited Partnership Appeal,* 64 Pa. Commonwealth Ct. 605, 441 A.2d 1345 (1982). There is no dispute here that the Authority is clothed with the power of eminent domain. .Secondly, the Court must consider whether the entity has substantially deprived .the owner of the use and enjoyment of his or her .property. Moreover, the burden is on the property owner to show exceptional circumstances which substantially deprive the owner of·use of the. property and that the deprivation is a direct and necessary consequence of the actions of the entity clothed with power of eminent

domain. *Filbert; Jacobs Appeal,* 55 Pa. Commonwealth Ct. 142, 423 A.2d 442 (1980), *appeal dismissed as improvidently granted, sub nom. Jacobs v. Nether Providence Township,* 499 Pa. 337, 453 A.2d 336 (1982); *Harborcreek Township.* In addition, the Court must balance the interests of the property owner against the need for planning agencies to maintain planning flexibility. As there are no hard and fast rules in determining a de facto taking, each case must be examined on its own factual situation. *Department of Transportation v. Southeast Delco School District,* 97 Pa. Commonwealth Ct. 485, 509 A.2d 981 (1986); *Visco v. Department of Transportation,* 92 Pa. Commonwealth Ct. 102, 498 A.2d 984 (1985).

The Authority contends that the evidence fails to support the trial court's conclusion that Appellees sustained diminution in the value of the Building or in the rental income generated by the Building as the direct and necessary result of the Authority's activities. Moreover, the Authority contends that any loss sustained by Appellees was the result of their own imprudent management of the Building coupled with depressed economic conditions generally prevailing in New Castle. The record fails to support the Authority's contention inasmuch as the testimony indicates that Appellees performed essentially the same functions as their rental agent, made numerous efforts to obtain new tenants, and expended considerable time and energy in maintaining the Building. N.T., pp. 76-87, November 13, 1985 Hearing; N.T., pp. 47, 78-79, November 14, 1985 Hearing.

After a careful examination of the record, this Court finds substantial evidence of record to support the trial court's findings of fact. The record shows that the Authority represented its intentions to complete the project throughout the period involved and that Appellees'

property suffered not as a result of general blighted conditions of the City, but rather as a result of the Authority's actions which affected the use of the Building. The Building was effectively removed from the competitive market and unable to compete for the demand for new office space following displacement activity. Exhibit 98; N.T., p. 7-13, November 8, 1985 Hearing.

The trial court in essence determined that Appellees had met their burden of proof in establishing exceptional circumstances which substantially deprived them of use and enjoyment of the Building and noted that activities incident to government programs may so pervasively interfere with use and enjoyment of private property as to constitute a de facto taking even where there has been no actual exercise of the power of eminent domain nor physical intrusion. *Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971). The trial court relied upon this Court's decision in *Filbert* which cites the Supreme Court's holding in *Conroy-Prugh:*

> Thus, if the loss of tenants . . . was imputable to a known 'imminence of condemnation,' it would be equally logical to impute the loss of tenants to the planned highway project itself and the tenants' awareness of it. What caused the owner . . . to lose tenants was the tenants' knowledge that the state's highway plans would eliminate the site of their rented quarters. What caused the owner's structure to lose its commercial viability was the awareness of the prospective direct physical impact, of the state's executed plan, to the property itself.

*Filbert* at 631, 441 A.2d at 1357. The trial court here found the following facts to be exceptional circumstances: The Authority kept the probability of condemnation of Appellees' property open for twelve years be-

fore finally ruling it out; that Appellees could not retain their tenants nor acquire new tenants for long-term leases; that Appellees were unable to increase rents sufficiently to either meet maintenance expenses or to renovate the Building; and that Appellees were unable to pay real estate taxes or keep the Building insured. *Robert W. McGaffic, Executor of the Estate of Eleanor L. McGaffic and Robert W. McGaffic in his own right v. The Redevelopment Authority of the City of New Castle and the City of New Castle* (No. 160 of 1978, filed October 9, 1986), slip op. at 20-21.

Throughout its argument, the Authority urges this Court to accept *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980), as controlling the facts in this case. This Court held in *Miller* that acts of the Authority did not constitute a de facto taking where a plan was developed; notice was given to property owners of the acquisition of their property; various properties were in fact acquired; negotiations were entered into for purchase of the property; widespread publicity about the acquisition occurred; and a three years and eleven month period passed before the Authority notified plaintiffs that due to a shortage of funds their property would not be taken. The property was officially deleted from the plan six years after the project was initiated. The *Miller* Court found that the Authority's actions did not rise to the level of a substantial deprivation of use and enjoyment of the property.

The circumstances of this case are materially different from those in *Miller.* The time period involved in *Miller* was substantially less, where as here, the owners were not informed until approximately twelve years later that their property would not be acquired. Further, *Miller* involved residential property as compared to rental property maintained by Appellees. Moreover, *Miller* suffered no deprivation of the use and enjoyment of the property.

*Conroy-Prugh* more appropriately controls resolution of the facts here. Both cases involve commercial property. In addition, plans of the entity clothed with the power of eminent domain were promulgated, publicized, and partly carried out. Each modification of the plan included taking of the commercial property which, prior to publicity, had been profitable. However, subsequent to public announcements about the plans, both properties began to lose tenants and occupancy diminished to such an extent that rentals did not cover taxes and operating expenses resulting in the eventual listing of the properties for tax sale. In finding a de facto taking of Conroy's property, the Supreme Court held that the Code was intended to cover the condition which occurred in *Conroy-Prugh*. Furthermore, the Code provides to a property owner the substantive remedy of filing a petition for the appointment of viewers which guarantees the constitutional right of just compensation for the taking of private property for public use. This Court similarly holds that the Code covers the conditions which occurred in the instant matter.

## II

The Authority next challenges the trial court's action in overruling the Authority's objection to expert testimony offered by Julian Fine (Fine), the real estate evaluation expert for Appellees. The Authority contends that the trial court erred in failing to strike Fine's testimony which according to the Authority unreasonably relied upon information provided by Appellee, Robert McGaffic, as a basis for Fine's opinions. In addition, the Authority argues that the trial court erred by failing to strike Fine's entire testimony as purely speculative.

The law clearly holds that qualification of an expert witness is within the trial court's discretion. *City of Philadelphia*. Fine was admitted by the trial court as a

real estate appraisal expert who was involved in appraisal of many of the properties in the New Castle Central Area as well as most of the properties in all projects of the city. Fine appraised the Building in late 1969, early 1970. N.T., pp. 2-5, January 9, 1986 Hearing. Throughout his testimony, the trial judge questioned Fine to insure his expertise. N.T., pp. 15-17, 31-34, January 8, 1986 Hearing. Fine admitted that he spent time with McGaffic reviewing records of rental activity which were admitted into the evidence. N.T., p. 171, January 8, 1986 Hearing. It should be noted that the Authority failed to question Fine as to what information was obtained from McGaffic. Therefore, this Court rejects the Authority's argument that the trial court erred in failing to determine whether data relied upon was the type of information reasonably relied upon by experts in the field in forming opinions or inferences. *See Maravich v. Aetna Life and Casualty Co.,* 350 Pa. Superior Ct. 392, 504 A.2d 896 (1986).

The Authority disputes the trial court's ruling that cross-examination of the expert would safeguard the credibility aspect of the data relied upon by Fine. N.T., pp. 208-212, January 8, 1986 Hearing. Moreover, as argued by the Authority, the trial court abused its discretion in this regard and thereby prejudiced the Authority by admitting the expert testimony which included the ultimate fact. *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa. Superior Ct. 218, 496 A.2d 762 (1985). The admissibility of expert opinion is a matter initially to be determined by the trial court which will not be disturbed upon appeal unless the trial court clearly abused its discretion. *Klyman v. Southeastern Pennsylvania Transportation Authority,* 331 Pa. Superior Ct. 172, 480 A.2d 299 (1984). An expert witness may provide opinion testimony on an ultimate issue provided that the testimony was otherwise admissible. *See Com-*

monwealth v. Daniels, 480 Pa. 340, 390 A.2d 172 (1978); *Swartz v. General Electric Company,* 327 Pa. Superior Ct. 58, 474 A.2d 1172 (1984). *Also see* L. Pakel and A. Poulin, Pennsylvania Evidence, Rule 703, at 516 (1987), which describes the variety of ways in which an expert may develop facts which form the basis of an opinion. It appears from the record that Fine was present during the testimony of McGaffic and that the basis of Fine's opinion testimony was his own personal knowledge as well as evidence presented by McGaffic.

The Authority's contention that error was committed by admitting Fine's speculative testimony is equally without merit. Fine opined that the Building was competitive in the downtown New Castle market; there was a need for more rental space in the area; and that there would have been a viable market for the rental space if the property had been allowed free access to prospective tenants. In addition, he stated that it would have been unfeasible to raise rents or renovate the Building during the threat of condemnation as tenants seeking space would have wanted long-term commitments which the Building could not guarantee thereby rendering the rental space unmarketable. N.T., pp. 149-162, January 8, 1986 Hearing. The Authority does not explain why the testimony was considered to be speculative, and no independent basis exists in the record to support a holding other than that Fine expressed his opinion with an adequate degree of certainty. *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971).

Nor does the record indicate any confusion by the trial judge in his analysis of the expert testimony as argued by the Authority. The trial judge stated that he was unknowledgeable about things such as rental values and similar matters which does not necessarily impute confusion on his part. N.T., pp. 35-36, 134-136, January 8, 1986 Hearing. The trial court analyzed the entire

record before accepting the expert's conclusions which were included in the court's opinion. The record thus fails to evidence any confusion by the trial court or speculation or conjecture by Fine. The expert's response was to a lengthy hypothetical question which assumed pertinent facts already of record. N.T., pp. 55-59, January 17, 1986 Hearing. Therefore, no abuse of discretion was committed by the trial court in accepting the expert's opinion testimony.

This Court finds that there was substantial evidence to support the trial court's finding of a de facto taking of Appellees' property. No error having been committed, the trial court is accordingly affirmed.

### Order

And Now, this 4th day of October, 1988, the October 8, 1986 order of the Court of Common Pleas of Lawrence County is affirmed.

This decision was reached prior to the resignation of Judge MacPhail.