557 A.2d 1147

In the Matter of Condemnation In Fact, by The City of Allentown Arising From the Acts and Actions by The Said City, Its Agents, Employees and Officials With Regard to The Neuweiler Brewery in Eminent Domain. George M. Hanna, for himself and as equitable owner through the Pennsylvania Development Credit Corporation and Pennsylvania Development Credit Corporation in its own right, Appellants *v.* The City of Allentown et al., Appellees.

Argued October 31, 1988, before Judges DOYLE and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*John P. Karoly, Jr., Karoly Law Offices, P.C.,* for appellants.

*Alan M. Black,* with him, *Kevin K. Kercher, Black, Epstein, Prokup and McCarthy,* for appellees.

OPINION BY JUDGE SMITH, April 21, 1989:

Appellants appeal from the February 4, 1987 order of the Court of Common Pleas of Lehigh County which sustained Appellees' preliminary objections in the nature of a demurrer and dismissed Appellants' complaint. This litigation commenced when Appellants, George M. Hanna and the Pennsylvania Development Credit Corporation, equitable and legal owners respectively of the Neuweiler Brewery, filed in the trial court a praecipe for writ of summons against Appellees on January 4, 1985. A two-count complaint was later filed on January 30, 1985 under Section 502 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502.

Appellants assert that they have been deprived of their real and material rights in the named property without due process of law, and in count one they request that this Court appoint viewers to determine the value of said property and assess just compensation. In count two of their complaint, Appellants allege that the statements of city officials at a budget hearing constituted an independently tortious form of interference with property rights. Appellants claim $800,000 in compensatory and $1,000,000 in punitive damages.

Appellants aver in their complaint that on October 12, 1984, Appellee Raymond Polaski (Polaski) in the course of his duties as Director of the City of Allentown's Department of Code Enforcement proposed at a budget

hearing that funding be allocated for the demolition of the Neuweiler Brewery. Appellee Donald Bernhard (Bernhard), Director of Allentown's Department of Community Development, allegedly agreed with these remarks on grounds that the Neuweiler Brewery could not be successfully rehabilitated. On the following day, this specific proposal was reported in a local newspaper. Appellants submit that as a direct result of the named city officials' course of action and the subsequent publicity attending their remarks, Appellants have been unable to proceed with plans for rehabilitation and/or sale of the Neuweiler Brewery.

Subsequent to briefing and argument, the trial court sustained Appellees' preliminary objections in the nature of a demurrer and dismissed Appellants' complaint resulting in appeal to this Court.[1]

Appellants raise four issues for review by this Court: whether the trial court erred in sustaining Appellees' preliminary objections without first conducting an evidentiary hearing; whether the trial court erred in failing to find a de facto taking of Appellants' property; whether the trial court erred in finding that it is not procedurally permissible for a property owner to append a tort claim to an action seeking the appointment of a board of view under the Code; and whether the trial court erred in finding that the Appellees never tortiously interfered with Appellants' property rights.

---

[1] This Court's scope of review where the trial court has sustained preliminary objections to a petition for appointment of viewers is limited to determining whether or not the trial court committed an abuse of discretion or an error of law, and, where the trial court makes findings of fact, this Court must determine whether or not such findings are supported by competent record evidence. *McGaffic v. Redevelopment Authority of New Castle,* 120 Pa. Commonwealth Ct. 199, 548 A.2d 653 (1988), *appeal denied,* Pa. , 565 A.2d 1168 (1989); *Department of Transportation v. Dixon Ticonderoga Co.,* 93 Pa. Commonwealth Ct. 53, 500 A.2d 938 (1985).

It is well established in this Commonwealth that a de facto taking occurs whenever an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *See McGaffic v. Redevelopment Authority of New Castle,* 120 Pa. Commonwealth Ct. 199, 548 A.2d 653 (1988) (citing *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974)); *Department of Transportation v. Steppler,* 114 Pa. Commonwealth Ct. 300, 542 A.2d 175 (1988). "Where a de facto taking is alleged, the property owner bears a heavy burden of proof and must show that exceptional circumstances exist which substantially deprive him of the use of his property and further, that this deprivation is the direct and necessary consequence of the actions of the entity having the eminent domain power." *Holmes Protection of Pittsburgh Inc. v. Port Authority of Allegheny County,* 90 Pa. Commonwealth Ct. 342, 346, 495 A.2d 630, 632 (1985), *appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988).

## I.

Initially, Appellants assert that the trial court erred in sustaining Appellees' preliminary objections without first conducting an evidentiary hearing. As this Court has recently held:

When confronted with a petition for appointment of viewers alleging a de facto taking to which a preliminary objection in the nature of a demurrer is filed, the lower court must first decide whether as a matter of law the averments of the petition, taken as true, are sufficient to state a cause of action of a de facto taking.

If not, the preliminary objections must be sustained and the petition dismissed or the petitioner allowed to amend his pleading. If the averments, taken as true, might establish a de facto

taking, the lower court must take evidence by deposition or otherwise so that a judicial determination might be made. If the averments on their face establish a de facto taking, then the preliminary objection must be dismissed. Petition of Ramsey, 20 Pa. Commonwealth Ct. 207, 342 A.2d 124 (1975).

*Harborcreek Township v. Ring,* 48 Pa. Commonwealth Ct. 542, 544, 410 A.2d 917, 918 (1980). *See also* Section 406(e) of the Code, 26 P.S. §1-406(e).

Appellees submit that the use of depositions to create an evidentiary record is expressly sanctioned by the Code and emphasize that in the instant case, an extensive record was created by the parties through their deposed testimony. Appellants contend that they have been deprived of their right to due process because "the taking of evidence by the trial court was limited to its potential to review depositions and affidavits attached to the parties' briefs." Appellants' Brief, pp. 7-8. Appellants concede their participation in the proceedings that created an evidentiary record in the form of depositions and do not deny that Appellees' preliminary objections were briefed and argued orally before the trial court. Nevertheless, Appellants contend that the trial court cannot rule on preliminary objections which raise issues of fact until it has conducted an evidentiary hearing, citing *City of Philadelphia v. Martorano,* 38 Pa. Commonwealth Ct. 573, 394 A.2d 674 (1978).

Appellees correctly distinguish *Martorano* from the instant case on grounds that in *Martorano* no evidentiary record of any kind was developed by the trial court before it dismissed preliminary objections, whereas instantly "an extensive deposition record was developed over a period of two years, including depositions of all the parties or their representatives." Appellees' Brief, p. 10.

Appellants in the alternative assert that the trial judge sustained preliminary objections without sufficient consideration of the evidentiary record created by the parties. Nothing in the record supports Appellants' assertion. The record on appeal includes the original papers and exhibits filed in the lower court, the transcripts of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court. Pa. R.A.P. 1921. This Court may, therefore, consider only material duly certified in the record transmitted to the lower court. *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974); *Hudgins v. Jewel T. Discount Store*, 351 Pa. Superior Ct. 329, 334, 505 A.2d 1007, 1010 (1986). Instantly, Appellees strenuously object to receipt of Appellants' supplementary materials contained in their appellate brief which were not entered in the record below. Therefore, as those supplementary materials were never duly certified to this Court, they will not be given any consideration on appeal. *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985).

Upon review of the record, this Court is satisfied that nothing in the trial court's opinion suggests a failure on its part to consider the pertinent evidence of record. Nor did the trial court err in failing to conduct an evidentiary hearing where, as here, an extensive record was developed in accordance with provisions of the Code.

## II.

Appellants claim that the statements made by Appellees Polaski and Bernhard at the budget proposal hearing and the Allentown Morning Call newspaper publicity the following day directly resulted in their loss of rental income and Appellants' inability to sell their property. Appellants submit that the trial court erred at law when

it found that Appellants had failed to present sufficient evidence to establish a de facto taking.

Appellants immediately concede that mere publicity concerning the proposed taking of property does not constitute a de facto taking. *See Commonwealth Appeal,* 422 Pa. 72, 221 A.2d 289 (1966). This Court has recently addressed the subject of pre-condemnation publicity as follows:

> It has been held that where rumors begin to take on substance and an agency drafts plans, newspaper articles appear, and the agency announces, publishes, and plots its final plan on the city map, this conduct does not constitute a de facto taking. Commonwealth Appeal, 422 Pa. 72, 221 A.2d 289 (1966).

*Visco v. Department of Transportation,* 92 Pa. Commonwealth Ct. 102, 105, 498 A.2d 984, 986 (1985). Thus, mere uncertainty concerning future condemnation plans without resulting loss of tenants or loss of income to support the property has been held insufficient to constitute a de facto taking. *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980). Appellants submit, however, that a loss of rental income or the unmarketability of property in addition to a public proclamation of the imminence of a proposed taking have been considered exceptional circumstances which substantially deprive a property owner of the use and enjoyment of his property. Appellants' Brief, p. 12.

Here, Appellants ignore the import of *Conroy-Prugh* and misapprehend the holdings in *In re: Crosstown Expressway,* 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971) and *Department of Transportation v. Lawton,* 50 Pa. Commonwealth Ct. 144, 412 A.2d 214 (1980). This Court recently interpreted the holding in *Conroy-Prugh* as follows:

An examination of the caselaw in this area reveals that the issue of whether an owner has been substantially deprived of the beneficial use of his property has been considered primarily in the context of an income-producing commercial property. In Conroy-Prugh Glass Co. v. Commonwealth, 456 Pa. 384, 321 A.2d 598 (1974), the Pennsylvania Supreme Court held that a de facto taking had been shown where (1) the location of the proposed public improvement had become so fixed that condemnation of the owner's property was inevitable, (2) publicity over an extended period about the imminence of that inevitable condemnation had caused the property owner to lose tenants so that the property no longer generated sufficient income to cover taxes and operating expenses, and (3) as a consequence, the property owner faced the loss of his property. Thus, in Conroy-Prugh and the cases which have followed it, the courts' inquiry is whether the property owner has demonstrated by substantial evidence that a formal condemnation of his land was inevitable, and that the loss of rental income and the unmarketability of the property was the proximate result of the Department's activity. (Citations omitted.)

*Department of Transportation v. Kemp,* 100 Pa. Commonwealth Ct. 436, 441-442, 515 A.2d 68, 71-72 (1986), *appeal granted,* 515 Pa. 586, 527 A.2d 546 (1987), *affirmed, Department of Transportation v. Smoluk,* 517 Pa. 309, 535 A.2d 1051 (1988) (consolidated on appeal). Thus, only where the publicity from an inevitable condemnation has directly affected the realized income of the property owner does that publicity deprive the owner of the use of his property, and result in de facto taking.

In *Crosstown*, this Court stated that "under exceptional circumstances, it has been held in Pennsylvania and elsewhere that governmental action demonstrating an intention to effect a public improvement and acting thereon in a manner demonstrating commitment to completion of the improvement amounts to a taking in a constitutional sense. ..." *Id.*, 3 Pa. Commonwealth Ct. at 5, 281 A.2d at 911. Finally, in *Lawton*, this Court held that property owners must demonstrate by substantial evidence that a formal condemnation of their land is inevitable, and that loss of rental income and/or unmarketability of the property are the proximate results of governmental activity.

The trial court stated that it was not required to resolve the conflicting deposition testimony concerning Appellants' alleged loss of rental income and inability to sell the property because even if the trial court were to accept the allegations of injury as true, Appellants made no showing that the deprivation complained of was a direct and necessary consequence of the governmental action in question. Trial Court Opinion, p. 4. Instantly, the record is replete with evidence to support the finding that the governmental activities upon which Appellants' claim of de facto taking is based did not directly affect the Appellants' immediate use of their property or expose them to loss of that property. Appellees' verbal statements at the budget hearing and the publicity attending those statements did not result in destruction, restriction or interruption of the property owners' use and enjoyment of the property. The evidence in this case establishes that the owners exercised full control and enjoyed all the benefits accruing from ownership.[2] The trial court

_____

[2] There was no averment that as a direct result of city officials' pre-condemnation actions the owners were unable to use the property for commercial purposes. Nor was there any averment that the owners were threatened with actual loss of their property as a consequence of the imminence of condemnation.

did not err in finding that the alleged conduct on the part of Appellees did not entitle Appellants to relief.

### III.

Appellants assert, in the alternative, that they are entitled to compensatory and punitive damages resulting from allegedly tortious interference by Appellees with the exercise of Appellants' rights in their property. Appellees submit that Appellants' exclusive remedy exists under the Code and that additional claims for damages in tort have been waived.

In *St. Catherine Church v. Mountaintop Area Joint Sanitary Authority,* 58 Pa. Commonwealth Ct. 181, 427 A.2d 726 (1981), this Court held that the Code affords a complete and therefore exclusive remedy for a de facto taking. The St. Catherine and St. Jude Churches alleged that the Mountaintop Area Sanitary Authority had entered their lands without filing any declaration of taking. The trial court held that the churches' exclusive remedy was to treat the alleged authority action as a de facto taking and petition for the appointment of viewers under Section 502(e) of the Code; trespass and ejectment actions were dismissed by this Court. Moreover, in *Quaker City Gun Club v. City of Philadelphia*, 99 Pa. Commonwealth Ct. 259, 512 A.2d 815 (1986), this Court reiterated the principle that a property owner has the option to seek damages in an action in trespass or compensation for the actual taking under the Code, and if a property owner seeks an appointment of viewers to assess compensation, the property owner is deemed to have waived the trespass.

Appellants rely on *Lutzko v. Mikris*, 48 Pa. Commonwealth Ct. 75, 410 A.2d 370 (1979), for the proposition that the Code as well as case law indicate that the Code is not the exclusive remedy in cases where no condemnation has occurred. Appellants' reliance on *Lutzko* is mis-

placed. In *Lutzko,* it was alleged in a trespass action that defendants' negligent construction of homes diverted water to plaintiffs' land. Defendants filed an answer to plaintiffs' complaint and a complaint joining the Commonwealth as an additional defendant alleging that the Commonwealth negligently failed to maintain proper drainage along a legislative route abutting the property and was liable alone or over to the defendants. This Court held that in such circumstances, where the defendants had no standing to bring an eminent domain action because they did not own the land, the exclusive remedy against the state was an action in trespass. Such circumstances do not exist in the matter *sub judice,* and the trial court thus did not err in dismissing Appellants' tort claim.

As substantial evidence exists of record to support the trial court's finding that no de facto taking of Appellants' property occurred, this Court finds no error by the trial court in sustaining Appellees' preliminary objections and dismissing Appellants' complaint. Accordingly, the trial court is affirmed.

## ORDER

AND NOW, this 21st day of April, 1989, the February 4, 1987 order of the Court of Common Pleas of Lehigh County is affirmed.