607 A.2d 315

**Thomas A. DARLINGTON, Appellant,**

**v.**

**COUNTY OF CHESTER, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 2, 1992.

Decided April 9, 1992.

Petition for Allowance of Appeal Denied Aug. 12, 1992.

178

Eugene H. Evans and Milton A. Feldman, for appellant.

Kathleen Connor–Garand, for appellee.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Thomas A. Darlington (Darlington) appeals from an order of the Court of Common Pleas of Chester County which

sustained the preliminary objections filed by the County of Chester (County) and dismissed Darlington's second amended petition for appointment of a Board of View.

Darlington is the owner of six tax parcels of real estate containing sixteen commercial properties, all of which are located on one block in the Borough of West Chester (Borough). The block is bounded by Wollerton Street on the south, South Darlington Street on the east, West Market Street on the north and South New Street on the West. Darlington's rental properties are described as follows:

- 226 West Market Street: A three-story brick office building with parking for ten cars in the rear of the building.
- 228 West Market Street: Portions of a structure which was gutted prior to major reconstruction and renovation of a three-story brick office building with a full basement.
- 232 West Market Street: A three-story brick building with a small office and one-bedroom apartment on the first floor and three-bedroom apartment on the second and third floors.
- 7 South New Street: A two-story brick townhouse with full basement.
- 227 and 229 Wollerton Street: Two two-story brick reversed twin townhouses.
- Wollerton Street Garages: Eleven garages each with an interior dimension of eight feet by twenty feet.

R.R. 102a–107a. A parking lot owned by the County is also located on the same block as Darlington's properties.

In the mid–1980s the County determined that it needed to consolidate its offices which were scattered in different locations in the Borough and expand its office space to allow for the projected growth of the County government. The County had initial architectural and engineering work done for a proposed Public Services Building and parking facilities and indicated that the proposed building would be located on the County-owned West Market Street parking lot.

By written agreement dated December 15, 1987 (Agreement), the County then retained the Harry F. Taylor Company Realtors (Taylor) to appraise all the private properties located within the same block as the County parking lot, including Darlington's properties, and to approach the respective owners to determine their willingness to sell their properties to the County. Taylor was not, however, authorized to negotiate any purchases unless so requested by the County. When Taylor approached Darlington informing him that the County was interested in acquiring his properties, Darlington requested a confirmation of that conversation in writing. On June 21, 1988 Taylor sent Darlington the confirmation letter and advised him to obtain professional advice regarding the tax and legal ramifications of the proposed acquisition of his properties. Similar letters were also sent to the other owners of non-County property within the block.

The proposed action of the County generated significant publicity and much of the comment was in opposition to the County's plan to acquire the private properties. As a result of the adverse publicity, the County Commissioners indicated that they might seek alternative sites for the proposed Public Services Building.

On August 4, 1988 Darlington, accompanied by his real estate agent, attended a meeting with Taylor and a realtor who had been retained by the County to perform a second appraisal of the private properties. Darlington asked Taylor whether he should relet space vacated by tenants and whether he should commence the reconstruction and renovation of the property at 228 West Market Street which had been gutted for the purpose of creating additional space for his tenant at 226 West Market Street. Taylor advised against reletting and continuing with the renovation.

In the fall of 1988 Darlington, concerned about the failure of the Commissioners to finalize matters regarding their consideration of alternative sites for the County building, wrote several letters inquiring into the status of the proposed acquisition of private property. On December 22,

1988 Commissioner Dominic T. Marrone responded to Darlington's letters, stating that there was no immediate plan to acquire Darlington's properties.

On August 25, 1989 one of Darlington's tenants, the Association of Retarded Citizens (ARC), advised him that it would vacate the premises at 226 West Market Street on or about November 4, 1989. ARC stated that in light of its need to continue its services, it had commenced looking for new space because of the uncertainty surrounding the County's proposal to expand its offices on the 200 block of West Market Street. R.R. 168a.

Prior to the loss of ARC as a tenant, on April 7, 1989 Darlington had filed a petition in the trial court for a Board of View to be appointed to assess damages pursuant to Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502(e), asserting that the County's conduct constituted a de facto taking of his rental properties. The County filed preliminary objections in the nature of a demurrer, contending that Darlington failed to aver facts sufficient to support a finding that there was a de facto taking.

██ Following an evidentiary hearing, on January 23, 1991 the trial court issued an order sustaining the County's preliminary objections and dismissing Darlington's petition. The trial court, based on the standards set forth in *Matter of City of Allentown*, 125 Pa.Commonwealth Ct. 290, 557 A.2d 1147 (1989) (citing *Conroy–Prugh Glass Co. v. Department of Transportation*, 456 Pa. 384, 321 A.2d 598 (1974)), found that no de facto taking had occurred. Darlington's appeal to this Court followed.[1]

Darlington first contends that the trial court, following the evidentiary hearing, did not make findings of fact and conclusions of law in order to determine whether a de facto

1. Our scope of review in a case where the trial court has sustained preliminary objections to a petition for an appointment of viewers is limited to a determination as to whether or not the findings are supported by competent evidence or an error of law was committed. *Miller Appeal,* 55 Pa.Commonwealth Ct. 612, 423 A.2d 1354 (1980).

taking had occurred and, accordingly, the case must be remanded so that the trial court may do so. In support of his contention, Darlington cites the case of *Department of Transportation v. Gwilliam*, 63 Pa.Commonwealth Ct. 174, 437 A.2d 1047 (1981).

[2] In *Gwilliam*, this Court remanded the matter for an opinion and necessary findings of fact because the trial court "lacked an opinion" which would provide this Court with factual findings indicating a basis for the conclusion that there was a de facto taking. In the present appeal, however, the trial court has provided this Court with factual findings and conclusions of law. The order of the trial court includes an extensive footnote by the hearing judge which contains factual findings regarding Darlington's properties, conclusions of law on the issues of inevitable condemnation and substantial deprivation, and the hearing judge's reasoning as to why no de facto taking occurred. Because *Gwilliam* does not require headings which set forth factual findings and because there is no procedural rule or statutory authority requiring findings of fact and conclusions of law, the trial court's lack of a formal opinion containing such headings is, if anything, harmless error.

Darlington also contends that the trial court erred in finding that a de facto taking did not occur because the acts of Taylor in sending him the June 21, 1988 letter resulted in a loss of rental income and unmarketability of his properties. In order to establish a de facto taking, the condemnee must show that there are exceptional circumstances which have substantially deprived him of the beneficial use and enjoyment of his property. *Department of Transportation v. Steppler*, 114 Pa.Commonwealth Ct. 300, 542 A.2d 175 (1988). This substantial deprivation must be occasioned by the actions of the entity clothed with the power of eminent domain, be caused as a result of the exercise of that power, and the damages sustained by the condemnee must be an immediate, necessary and unavoidable consequence of such exercise. *McGaffic v. Redevelopment Authority of New Castle*, 120 Pa.Commonwealth Ct.

199, 548 A.2d 653 (1988); *Florek v. Department of Transportation,* 89 Pa.Commonwealth Ct. 483, 493 A.2d 133 (1985); *Harborcreek Township v. Ring,* 48 Pa.Commonwealth Ct. 542, 410 A.2d 917 (1980). The burden of proving a de facto taking is a heavy one, *Holmes Protection of Pittsburgh, Inc. v. Port Authority of Allegheny County,* 90 Pa.Commonwealth Ct. 342, 495 A.2d 630 (1985), *appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988), and each case turns on its unique factual matrix. *Rawls v. Central Bucks Joint School Building Authority,* 8 Pa.Commonwealth Ct. 491, 303 A.2d 863 (1973).

In the present appeal, the County initially decided that the proposed Public Services Building would be located on the 200 block of West Market Street. In connection with the proposed acquisition, the County retained Taylor to appraise real estate and to approach the landowners as to their willingness to sell to the County. R.R. 469a. On June 21, 1988 Taylor sent Darlington a letter which stated, in pertinent part:

Confirming our conversation of June 7, 1988, *we have been authorized to negotiate with you on behalf of Chester County to acquire your property at various addresses.* There were several points which we discussed, the most important of which were:

1. *The County will purchase the properties as soon as you like,* or as late as a year from now.

2. The County will purchase subject to all leases.

3. The County's offer will be based on two appraisals. You should have your own appraiser render an opinion on value.

4. Hopefully we can negotiate a price based on the appraisals.

5. *If not, the County can condemn the properties,* which means they will take title to the properties, and at that time, pay you their appraised value. (Emphases added.)

R.R. 9a. After similar letters were sent to other landowners, however, public opposition to the proposed acquisition

of private property increased, R.R. 172a–188a, and numerous newspaper articles began expressing outrage at the County's proposal. R.R. 110a–130a. Faced with this opposition, the County began to look into alternative sites for the municipal building. R.R. 241a. On December 22, 1988, Commissioner Marrone informed Darlington that the County was no longer interested in acquiring his properties. R.R. 196a. ·

■ While it may have appeared to Darlington that the site of the proposed municipal building had become fixed as of June 21, 1988, by December 22, 1988 it should have been clear to him that the County was not seriously considering the condemnation of his properties. Moreover, by April 7, 1989, the date Darlington filed his petition with the trial court, the site of the proposed building on the 200 block of West Market Street had not become so fixed that condemnation of Darlington's properties was inevitable. *See Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974).

■ Even if Darlington had been able to establish inevitable condemnation of his properties as of June 21, 1988, his claim that a de facto taking had occurred would nevertheless fail. This is because Darlington has not shown that he has suffered substantial deprivation of the beneficial use and enjoyment of all his properties, that the ensuing damage to all his properties was immediate, necessary and unavoidable, and that his properties were reduced in value because they became impossible to rent.

With regard to the eleven garages located at Wollerton Street, Tax Parcel 1–9–194, Darlington admits that he did not suffer substantial deprivation. R.R. 355a. In fact, the record shows that he has been able to rent the garages without any loss of rental income, even as of the date he filed his petition before the trial court. R.R. 356a.

The property at 7 South New Street, Tax Parcel 1–9–187, had been renovated and listed with a West Chester realtor for rental in May 1988. R.R. 357a. Although the property

had not been rented as of June 21, 1988, R.R. 358a, it was not withdrawn from the market and a tenant was found on or about November 1, 1988. R.R. 359a–360a. As of the date of the evidentiary hearing, the property continued to be rented. R.R. 361a.

As to the property located at 232 West Market Street, Tax Parcel 189, Darlington had been renting the small first floor office to a storeowner as of June 21, 1988, R.R. 361a–362a. On December 31, 1988, the date on which the store lease expired, the tenant did not renew the lease but vacated the premises due to poor health and slow business. R.R. 170a. In August 1989 the office was rented as a result of an advertising sign placed in the office window. R.R. 364a. The apartments located in the same 232 West Market Street building were subject to long-term leases and were rented at all relevant times. R.R. 366a.

The properties located at 227 and 229 Wollerton Street, Tax Parcel 190.1, have both been rented without loss of income as of June 21, 1988 and continue to produce rental income for Darlington. R.R. 72a–73a.

Our review of the record establishes that most of Darlington's properties remained rented throughout the time period in question. Under these circumstances, Darlington has not proven with substantial evidence that he suffered substantial deprivation of the use and enjoyment of his properties at the above addresses, and no de facto taking occurred with respect to those properties.

More difficult is the situation involving Darlington's properties at 226 and 228 West Market Street. The property at 226 West Market Street, Tax Parcel 192, was at all relevant times occupied by ARC. In August 1989, however, eight months after the County informed Darlington that it was not interested in acquiring his property, ARC notified Darlington that they would not renew their lease because they could not continue their services at that location in light of the uncertainty involving the County's proposed expansions. R.R. 168a. On November 4, 1989 ARC vacated the premis-

es, and the property is not currently occupied by any tenant. R.R. 372a.

The 228 West Market Street property, Tax Parcel 191, was gutted in preparation for reconstruction and renovation to expand office space for ARC. The property has, at all relevant times, been in a gutted condition and remains in that condition, R.R. 70a, because Darlington allegedly relied on Taylor's recommendation not to proceed with the renovation. Darlington asserts that he lost ARC as a tenant at 226 West Market Street because he could not provide ARC the promised expanded space at 228 West Market Street.

This Court has previously held that mere uncertainty concerning future condemnation plans without resulting loss of tenants or loss of income to support the property has been held to be insufficient to constitute a de facto taking. *City of Allentown*, 125 Pa.Commonwealth Ct. at 297, 557 A.2d at 1150. While there may have been uncertainty as of the date of Taylor's letter to Darlington, any uncertainty was removed on December 22, 1988 when the County informed Darlington that it had no interest in acquiring his properties. Because uncertainty regarding the proposed acquisition was removed some eight months before ARC notified Darlington that it would not be renewing its lease, we cannot conclude that ARC's nonrenewal was a result of any uncertainty regarding the County's condemnation plans.

Moreover, Darlington claims that he lost ARC as a tenant because Taylor's letter of June 21, 1988, the act which he contends resulted in the de facto taking and which bound the County as the principal in the agency relationship with Taylor, created uncertainty as to whether the County would condemn his properties. The County, however, contends that despite any uncertainty, no de facto taking had occurred on June 21, 1988 because Taylor was acting as an independent contractor and not as an agent for the County and, accordingly, could not bind with County with its actions.

In general, a principal-agent relationship is determined by the agreement made by the parties defining the circumstances under which the agent may act for the principal. Implicit in this relationship is the consent by the principal that one may act on his or her behalf and is subject to his or her control. Restatement (Second) of Agency, § 1, Comment b (1958); *Burnatoski v. Butler Ambulance Service Co.*, 130 Pa.Commonwealth Ct. 264, 567 A.2d 1121 (1989). Where an agent has authority to exercise discretion, the exercise thereof will bind the principal. *Nuzum v. Spriggs*, 357 Pa. 531, 55 A.2d 402 (1947). In contrast, one who engages another to perform certain services will not be responsible for the acts of the independent contractor or his or her employees. *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963).

The County–Taylor agreement reflects that Taylor was to appraise real estate and to approach the private landowners as to their willingness to sell their property to the County. However, Taylor was not authorized to initiate or conclude negotiations for the acquisition of private property without the County's consent. Although Taylor could exercise some discretion, Taylor's activities were ultimately subject to the control of the County. Clearly, Taylor was acting as the County's agent and not as an independent contractor.

Regardless of whether Taylor was an agent or independent contractor for the County, the act of sending Darlington the letter of June 21, 1988 could not, by itself, have constituted a de facto taking of the properties at 226 and 228 West Market Street. To proceed under Section 502(e) of the Code, a de facto taking must result from a governmental body's actual exercise of the power of eminent domain; it cannot result from the actions of the condemning entity's agents or independent contractors. *Deets v. Mountaintop Area Joint Sanitary Authority*, 84 Pa.Commonwealth Ct. 300, 479 A.2d 49 (1984); *Espy v. Butler Area Sewer Authority*, 63 Pa.Commonwealth Ct. 95, 437 A.2d 1269 (1981); *Lutzko v. Mikris, Inc.*, 48

Pa.Commonwealth Ct. 75, 410 A.2d 370 (1979). Because Darlington's loss of ARC as a tenant due to uncertainty concerning the County's proposed acquisition was not effectuated by any act on the part of the County but on the part of Taylor, we conclude that no de facto taking occurred in the present appeal. Accordingly, the order of the trial court will be affirmed.

## ORDER

AND NOW, this 9th day of April, 1992, the order of the Court of Common Pleas of Chester County dated January 23, 1991 is hereby affirmed.