# Nolen v. Newtown Township

C.P. of Delaware County, no. 99-1020.

*Marc B. Kaplin* and *David N. Bresder,* for plaintiff.
*Thomas Gallagher, Kathleen M. Ricciardi* and *Bruce A. Irvine,* for defendant.

CLOUSE, *P.J.,* June 8, 2001—Newtown Township enacted an ordinance on November 23, 1998. The ordinance suspended subdivision and land development approvals. The ordinance provided that no parcel or tract of land located within the township could be subdivided into smaller parcels for development. The ordinance provided that it would be in effect for a period of 18 months, unless extended by further action of the board of supervisors.

James A. Nolen III, owned certain parcels of land within the township which he desired to subdivide and develop, but could not, due to the subject ordinance. Therefore, he filed a petition for the appointment of a board of view pursuant to section 502(e) of the Pennsylvania Eminent Domain Code (26 P.S. §1-502(e)). Newtown Township filed preliminary objections to the

petition for the appointment of a board of view. This court denied the preliminary objections by an order dated June 29, 2000. This court also issued an opinion in support of its aforesaid order.

Newtown Township petitioned this court for reconsideration. Newtown Township has advanced two basic arguments in support of its petition for reconsideration. First, that there must be an evidentiary hearing in which Mr. Nolen must prove that the ordinance has resulted in a taking. Second, the township argues that the case of *Tahoe Sierra v. Tahoe Regional Planning Agency,* 228 F.3d 998 (9th Cir. 2000), decided by the U.S. Court of Appeals for the Ninth Circuit, provides that an ordinance temporarily suspending land development does not constitute a taking. This court will first address the *Tahoe Sierra* case.

First, the *Tahoe Sierra* case is not precedent for this court. Second, the principal question in the *Tahoe Sierra* case was whether a temporary planning moratorium enacted by a regional planning agency effected a taking of the affected parcels of property under the standard set forth in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992). This standard requires a finding that the regulation at issue denies all economically beneficial or productive uses of the subject land. The standard in Pennsylvania is different than the federal standard set forth in *Lucas,* which is derived from the Fifth Amendment to the United States Constitution. The Pennsylvania standard for determining whether a de facto taking has occurred is whether the subject governmental action has "*substantially* deprived the owner of the beneficial use of his property." See *Visco v. PennDOT,* 92 Pa.

Commw. 102, 498 A.2d 984 (1985); and *Miller and Son Paving Inc. v. Plumstead Township, Bucks County,* 552 Pa. 652, 717 A.2d 483 (1998). Therefore, the federal standard requires that *all* economically beneficial or productive uses of property be denied by the regulation. The Pennsylvania standard does not require that *all uses be denied,* but requires that the property owner be *substantially* deprived of the beneficial use of the property.

The *Tahoe Sierra* court correctly recognized that most regulatory takings cases should be resolved by balancing the public and private interests at stake, with three primary factors weighing in the balance: the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the governmental action. *Tahoe Sierra* at 6331, citing *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124 (1978). However, there are two specific circumstances in which the United States Supreme Court has found a governmental regulation to constitute a "categorical" taking without performing a balancing test under *Penn Central.* See *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426 (1982); *Tahoe Sierra* at 6332. The two circumstances in which a governmental regulation constitutes a categorical taking are when there is a physical invasion of the property by the government and where all economically beneficial or productive use of the land is taken by the regulation at issue. The *Tahoe Sierra* case did not address the balancing test, but merely whether the *Tahoe Sierra* regulation could be considered a denial of all of the economically beneficial or productive uses of the land in order to constitute a categorical taking without the need to perform the *Penn Central*

balancing test. The *Tahoe Sierra* court erred when it stated that the *First English* court very carefully defined temporary regulatory takings as those regulatory takings which are ultimately invalidated by the courts. *Tahoe Sierra* at 6343. The United States Supreme Court in *First English Evangelical Lutheran Church v. Los Angeles County,* 107 S.Ct. 2378 (1987), did not define a temporary taking as one that requires the regulation at issue to be declared invalid. In *First English,* the California Court of Appeals held that damages for a taking could not be awarded unless and until a land owner challenged the validity of the regulation at issue, was successful in the challenge, and the government continued to impose the subject regulation. Our United States Supreme Court specifically held that the landowner could obtain damages for a taking without the necessity of challenging the validity of the regulation at issue. The *Tahoe Sierra* court found that a regulation which is temporary cannot amount to a taking. However, in *First English,* the ordinance at issue was noted to be an "interim ordinance." 482 U.S. at 306, 319 and 327 n.6. An interim ordinance implies that it is not a permanent regulation, but is temporary in nature. Further, our United States Supreme Court specifically referenced the *First English* taking as a temporary taking, even though the ordinance at issue had not been declared as invalid. 482 U.S. at 318. The reference that a temporary taking is a regulatory taking which is ultimately invalidated by the courts, was a reference by the *First English* court to the case of *Agins v. Tiburon,* 24 Cal.3d 258, 157 Cal. Rptr. 372, 598 P.2d 25 (1979), *aff'd on other grounds,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). As previously indicated, the *First English* case involved an interim ordinance, which had

not been invalidated, and which the property owner alleged to constitute a taking. The *First English* case involved an ordinance which temporarily prohibited the construction, reconstruction, placement, or enlargement or any building or structure within any portion of a particular flood protection area, which encompassed property belonging to the First English Evangelical Church. 482 U.S. at 327 n.6.

The *Tahoe Sierra* court was correct, however, in noting that the United States Supreme Court in *First English* did not determine whether the underlying facts of the *First English* case constituted a taking. The U.S. Supreme Court assumed that a taking had occurred. Whether, in fact, a taking had occurred was not the issue before the court.

A court may not dismiss preliminary objections to a petition for appointment of a board of view without first conducting an evidentiary hearing to determine whether a de facto taking took place. *McGaffic v. Redevelopment Authority of City of New Castle,* 120 Pa. Commw. 199, 548 A.2d 653 (1988). In determining whether a de facto taking has occurred, the court must first determine whether the entity charged with the de facto taking was clothed with the power of eminent domain. *Id.* There is no dispute that Marple Township is clothed with the power of eminent domain.

Secondly, the court must consider whether the entity has substantially deprived the owner of the use and enjoyment of his property. The burden is on the property owner to show exceptional circumstances which substantially deprive the owner of the use of the property and that the deprivation is a direct and necessary consequence

of the actions of the township. *Id.* The court must balance the interests of the property owner against the need for planning agencies to maintain planning flexibility. There are no hard and fast rules in determining a de facto taking, each case must be examined on its own factual situation. *Id.* [It should be noted that the *McGaffic* decision has been limited relative to the appropriate scope of review of a trial court's dismissal of preliminary objections filed by the alleged taking authority. The scope of review of a trial court's dismissal of preliminary objections is limited to whether the trial court's findings are supported by competent evidence in the record, whether the court abused its discretion, or whether the court committed an error of law. See *Elser v. PennDOT,* 651 A.2d 567 (Pa. Commw. 1994).]

However, an evidentiary hearing is not required in every instance prior to a trial court's denial of preliminary objections to a petition for the appointment of a board of view. Evidence must be taken only if issues of fact are raised which are required to be determined prior to ruling on the question of whether a de facto taking has occurred. If the preliminary objections do not raise any such issues of fact, the trial court must simply examine the petition and sustain the preliminary objections if the averments of the petition are not sufficient to establish a de facto taking, or dismiss the preliminary objections if the averments do establish a de facto taking. See *Millcreek Township v. N.E.A. Cross Co.,* 152 Pa. Commw. 576, 620 A.2d 558 (1993).

The township has admitted the basic factual allegations of the petition for the appointment of a board of view. The township admits that Mr. Nolen is the owner

of the property. The township admits that Mr. Nolen prepared subdivision plans for each property and Mr. Nolen desires to proceed with the subdivision and development of the properties. Finally, the township admits that the moratorium ordinance prohibits Mr. Nolen from submitting subdivision plans to the township or from otherwise developing his properties. Therefore, this court, when it rendered its first opinion and order relative to the denial of the preliminary objections, found that a de facto taking has occurred since a very important property right, the right to develop, was affected by the township ordinance. While this court can certainly assume what burdens have been borne by Mr. Nolen as a result of the ordinance, such an assumption is probably inappropriate. Upon reconsideration, this court believes that an evidentiary hearing should be held. Mr. Nolen should prove the facts as to how the subject ordinance has affected his property, including the facts relative to any and all uses of the property alternative to development, during the moratorium.

## ORDER

And now, to wit, June 8, 2001, it is hereby ordered and decreed as follows:

(1) The township's motion to stay proceedings is denied. [The case relied upon by the township, *Naylor v. Hallam Township,* 717 A.2d 629 (Pa. Commw. 1998), appeal pending, does not address the issue of a taking. In the case at bar, assuming that the ordinance is valid, the property owner is alleging a taking.]

(2) The township's motion to stay board of view proceedings is granted in part and denied in part. The board

of view proceedings are stayed pending the outcome of an evidentiary hearing, as provided for in a separate order of this same date.

### ORDER

And now, to wit, June 8, 2001, upon reconsidering this court's opinion and order of June 29, 2000, it is hereby ordered and decreed as follows:

(1) The township's preliminary objections are granted in part and denied in part.

(2) An evidentiary hearing shall be held on October 2, 2001, at 10 a.m. The plaintiff shall be required to prove the facts as to how the subject ordinance has affected his property, including the facts relative to any and all uses of the property alternative to development, during the moratorium.