Shillito, Appellant, *v.* Metropolitan Edison Company.

Argued November 15, 1968.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John M. Eakin,* with him *Russell R. Griest,* and *Griest and Wiley,* for appellant.

*Samuel B. Russell,* with him *James D. Flower,* and *Ryan & Russell,* and *Myers, Myers, Flower & Johnson,* for appellee.

OPINION BY MR. JUSTICE EAGEN, April 23, 1969:

Russell J. Shillito owns and operates a 272 acre farm in southern Cumberland County.[1] On February 1, 1966, Metropolitan Edison Company (Edison) condemned a 200 foot-wide easement over the farm; the easement which was 2796 feet in length and comprised 12.8 acres was to be used for the installation of a 500 K.V. electric transmission line. Viewers were appointed and awarded damages, but Shillito appealed to the Court of Common Pleas claiming that the amount was inadequate. A jury trial ensued and damages in the amount of $40,000 plus detention damages were awarded. The lower court granted Edison's motion for a new trial and Shillito appeals.

The question for decision is whether or not, in awarding a new trial, the court below committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Maher v. College Club of Pittsburgh,* 427 Pa. 621, 235 A. 2d 134 (1967). We conclude that it did not and will therefore affirm.

At trial Shillito testified that, in his opinion, the highest and best possible use of the farm before the condemnation was for a multiplicity of alternate possible uses, namely, as a park, a race track, an industrial

---

[1] Shillito also owns a noncontiguous farm of 101 acres in the same area but that farm is not involved in this appeal.

site or a housing development site. An expert valuation witness called on Shillito's behalf offered his opinion that the highest and best possible use was for industrial development. Another such witness stated that residential development was the highest and best possible use. Based on these alleged possible uses, the witnesses expressed opinions of the before value of the land. Timely objections to the admissibility of these opinions as to before value based upon the above considerations were overruled, as were motions to strike this opinion evidence from the record.

In granting a new trial, the lower court conceded that Shillito's evidence established the physical adaptability of the land for use as a commercial, industrial or housing development, but ruled that Shillito's proof was not adequate to establish that there was a need for such uses in the area; hence the court ruled that the opinion evidence was speculative. In this respect, we agree.

Condemnation damages need not be based upon the use currently being made of the condemnee's property. However, if damages are sought upon the premise that the property has some other more valuable use, the condemnee must establish not only the physical adaptability of the property to such use but also, that there is a need for such use in the area. *Pennsylvania Gas & Water Co. v. Pennsylvania Turnpike Commission,* 428 Pa. 74, 236 A. 2d 112 (1967). And the manner of establishing this need is by demonstrating that a demand for it exists in the public market at the time the condemnation occurred. The bald assertion by the condemnee or his witnesses that such a demand exists is not enough. Such a demand must be established by competent proof. As was stated by Mr. Chief Justice MAXEY in *Graham & Co., Inc. v. Pennsylvania Turnpike Commission,* 347 Pa. 622, 33 A. 2d 22 (1943):

" ' . . . it always rests upon a party claiming the extraordinary damage first of all to show it, and to show that it was available to him for the purpose of conversion in the public market at the time he was deprived of his land by the railroad company. The mere assertion of any such fact without proof comes to nothing. . . .' " See also, *Gilleland v. New York State Natural Gas Corporation*, 399 Pa. 181, 159 A. 2d 673 (1960).

In the instant case the condemnee's own evidence shows that the land is used strictly for farming purposes; that the nearest residential development is one and one-half to two miles distant; that there is no extensive residential development anywhere in the area; and that there are no utility services available except telephone and electric services. Neither does the condemnee's evidence show that there is a public need or demand for land in the area to be used for either commercial, industrial or housing development sites. While it is true that the condemnee personally related isolated offers to purchase lots, presumably for residential construction, this is not sufficient in itself to establish a general need in the area for a residential development.

Order affirmed.