Eugene L. Visco and Michael Visco, Appellants *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued April 9, 1985, before Judges CRAIG and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*C. Stephens Vondercrone, Jr., Pearlstine, Salkin, Hardiman & Robinson,* for appellants.

*Thomas J. Hines,* with him, *William J. Cressler, Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellee.

OPINION BY SENIOR JUDGE KALISH, May 23, 1985:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County sustaining the preliminary objections of the Pennsylvania Department of Transportation (DOT) and dismissing the petition of Eugene L. and Michael Visco (appellants) for the appointment of a board of view.[1]

What we are concerned with in this case is a situation where a governmental agency such as DOT, although clothed with the power of eminent domain, but prior to its formal exercise, engaged in conduct which the property owner contends impinged upon the beneficial use of his property and resulted in a diminution in value, for which he seeks compensation. A de facto taking is not the physical seizure of property; rather, it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property. *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980).

---

[1] These takings are recognized under Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e). Section 303, 26 P.S. §1-303, make it the exclusive procedure and applies no less to de facto condemnations. The owner files a petition for the appointment of a board of view. If a preliminary objection in the nature of a demurrer is filed and factual issues are raised, the court must hold an evidentiary hearing and make a judicial determination with findings of fact and law. *Petition of Ramsey,* 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977). *Monaco v. Department of Transportation,* 26 Pa. Commonwealth Ct. 387, 363 A.2d 857 (1976).

The property owner contends that DOT's conduct, in toto, meets the criteria set down in our cases for a de facto condemnation. We affirm the action of the trial court.

Our scope of review is to determine whether the findings are supported by substantial evidence in the record and whether an error of law was committed. *Petition of Ramsey*, 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977).

Our courts have recognized the need to preserve some degree of flexibility in land use, and road and highway planning due to the tremendous financial burden on agencies absent this flexibility and seek to balance this with the property rights of the owner. Thus, there are no hard-and-fast rules to a determination of a de facto taking; rather, it depends on the factual situation in each case.

It has been held that where rumors begin to take on substance and an agency drafts plans, newspaper articles appear, and the agency announces, publishes, and plots its final plan on the city map, this conduct does not constitute a de facto taking. *Commonwealth Appeal*, 422 Pa. 72, 221 A.2d 289 (1966). Likewise, where the property is in the line of taking, but actual taking is postponed pending the governor's approval, no de facto taking occurs. *Department of Transportation v. Securda and Co., Inc.*, 16 Pa. Commonwealth Ct. 40, 329 A.2d 296 (1974). Also, there is no taking where the project is approved and funded, with the issuing of notices to and negotiations with the project owners, even though there are acquisitions of some of the properties and real estate appraisals are made on others. *Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971).

Our courts have been persuaded by instances where the above situations occurred, *plus* such facts as a potential loss of the property in a mortgage foreclosure, the loss of rental income, or the loss of tenants so that the property was made useless for its highest and best use. *Peter Roberts Enterprises, Inc. v. Department of Transportation,* 31 Pa. Commonwealth Ct. 479, 376 A.2d 1028 (1977); *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974); *Crosstown Expressway Appeal,* 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971). More recently, in *Department of Transportation v. Standard Investments Corp.,* 80 Pa. Commonwealth Ct. 649, 472 A.2d 282 (1984), *aff'd,* 506 Pa. 337, 485 A.2d 392 (1985), this court affirmed and adopted a decision of a court of common pleas where the key factor was that the property could not generate income sufficient to cover the taxes or the existing mortgages and, while there was no present threat of foreclosure in a tax or sheriff sale, the property owner demonstrated the property's inability to generate income through an ordinary sale as a result of the Department of Transportation's activities.

In the instant case, the trial court's findings, based on substantial evidence in the record, show that the property involved was in the line of taking and, that the property owners utilized the property as a fill dump. The beneficial use of a property includes not only its present use, but also all potential uses, including its highest and best use. In the absence of evidence to the contrary, the presumption is that the property's present use is the highest and best use, and the burden is on the property owner to show that the property is adaptable for another use and that there is a need for another use. *Shillito v. Metropolitan Edison Co.,* 434 Pa. 172, 252 A.2d 650 (1969).

In the instant case, the trial court found that there was no evidence that the property's beneficial use was substantially interfered with. In fact, the fill dump was only one-third full after many years of use. There was also no evidence of adaptability to another use or a need for any other use. The findings show that about one hundred abutting properties have been purchased by DOT and that DOT has offered to purchase other properties. The findings also show that plans were recorded, with notices of intention to condemn being sent to some property owners. While there was some evidence that the City of Philadelphia may have impeded some development by withholding building permits, thereby causing some minor loss of actual income, this was not substantial and did not affect the beneficial use of the property. Thus, we conclude that the trial court's findings are based on substantial evidence and that there was no error in concluding that no de facto condemnation occurred.

From the record it appears that the property owner's contention relates more to a diminution in value due to the *imminence* of condemnation rather than a *taking*. This is provided for in Section 604 of the Code, 26 P.S. §1-604, which provides that where property has declined in value due substantially to the imminence of condemnation, then such decline shall not be considered in determining fair market value. Of course, this relates to compensation rather than the issue of whether a taking occurred.

### Order

The order of the Court of Common Pleas of Philadelphia County, entered on November 4, 1983 at No. 2838 May Term 1982, is affirmed.