542 A.2d 175

Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Donald & Anne Steppler, Appellees.

Argued June 12, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge KALISH, sitting as a panel of three. Reargued February 25, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*J. Matthew Wolfe*, Assistant Counsel, with him, *Scott M. Olin*, Assistant Counsel, *Spencer A. Manthorpe*, Chief Counsel, and *Jay C. Waldman*, General Counsel, for appellant.

*Murray S. Eckell*, with him, *George D. Harwood*, and *Stephen J. Polaha, Eckell, Sparks, Levy, Auerbach & Monte*, for appellees.

OPINION BY JUDGE DOYLE, March 9, 1988:

The Pennsylvania Department of Transportation (Department) appeals from an order of the Court of Common Pleas of Delaware County dismissing its preliminary objections to Donald and Anne Steppler's petition alleging a *de facto* taking under Section 502(e) of the Eminent Domain Code (Code).[1] We reverse.

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e).

The entire Steppler property is a 1.3 acre parcel containing a single family residential dwelling with a pool, located on Sproul Road in Villanova, Pennsylvania. The property was first acquired by Mr. Steppler's parents in 1946, with the Stepplers acquiring title in 1974.

In December, 1968, the Governor of Pennsylvania approved plans for the construction of Legislative Route 1010 (commonly known as the Blue Route),[2] which would connect the Pennsylvania Turnpike with Interstate 95. These plans were recorded in August 1969 and show that a small triangular portion of the Stepplers' backyard (approximately 28' x 83' x 88'; .032 of an acre in area) would be required for the right-of-way. The highway as it goes behind the property generally is elevated between two and twenty-five feet above the ground by means of either a viaduct or fill.[3] It is unclear whether the specific portion of the highway on the Stepplers' property would also be elevated. These preliminary plans also do not indicate whether sound barriers would be constructed along this portion of the road.[4] The only work the Department did on the Stepplers' property occurred in 1975 when it placed stakes on that portion of the property actually required for the highway.

---

[2] LR 1010 is officially known as the Mid-County Expressway or Interstate 476.

[3] To give an idea of how much of the Stepplers' property will be required for the Blue Route, appended to this opinion (Appendix A) is a copy of the Department's plans showing only the Stepplers' property. This plan was introduced by the Stepplers in the trial court.

[4] Richard DeGrouchy, a witness for the Department, testified that the preliminary plans did not indicate whether sound barriers would be constructed along the Stepplers' property. Mr. DeGrouchy further indicated, however, that they would be shown on the final plans and Mrs. Steppler testified that Department officials had told her that sound barriers would be constructed.

The Stepplers first attempted to sell their home in July, 1981 when a realtor made up sales brochures and placed the property in multiple listing. The initial asking price was $135,000. This figure was lowered twice in a six month period, first to $129,500, and then to $119,900. No offers to buy the property were received.

In January, 1982, the Stepplers listed the property with a second realtor, who also placed the property in multiple listing. During 1982, the asking price remained at $119,500, but in 1983 the Stepplers raised it to $122,000. The property was shown ten times during 1983, but again no offers were received.

The Stepplers went to yet a third realtor, who again placed the property in multiple listing and also conducted "open house" days in order to market the property. This time the Stepplers asking price was increased to $125,000, which attracted no takers.

By 1984, the Department had acquired between eighty and eighty five percent of the required right-of-way for the Blue Route that lay north of the Stepplers' property and some of the necessary right-of-way located south of the Stepplers' property.[5]

On November 14, 1984 the Stepplers, filed a Petition for the Appointment of Viewers in the court of common pleas alleging a *de facto* taking of their *entire* property, to which the Department filed preliminary objections. After a hearing, the court found that the Department's activities had indeed caused a *de facto* taking of the Stepplers' entire property. This finding was based on the trial court's belief that the Stepplers had shown that their property was "unmarketable". Accord-

---

[5] Counsel for the Department could not explain, when asked at oral argument before the Court *en banc,* why no declaration of taking had been filed although all or part of other properties, both north and south of the Stepplers, had been condemned for the Blue Route construction.

ingly, that court dismissed the Department's preliminary objections and this appeal ensued.[6]

In order for a condemnee to prove that a *de facto* taking has occurred, he must show that there are exceptional circumstances which have substantially deprived him of the use and enjoyment of his property. *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980); *Perfection Plastics, Inc. Appeal,* 28 Pa. Commonwealth Ct. 396, 368 A.2d 917 (1977). This substantial deprivation must be occasioned by the actions of an entity cloaked with the power of eminent domain, be caused as a result of the exercise of that power, and the damages sustained by the condemnees must be an immediate, necessary and unavoidable consequence of such exercise. *Florek v. Department of Transportation,* 89 Pa. Commonwealth Ct. 483, 493 A.2d 133 (1985); *Harborcreek Township v. Ring,* 48 Pa. Commonwealth Ct. 542, 410 A.2d 917 (1980). The burden of proving a *de facto* taking is a heavy one, *Holmes Protection of Pittsburgh, Inc. v. Port Authority of Allegheny County,* 90 Commonwealth Ct. 342, 495 A.2d 630 (1985), and each case turns on its unique factual matrix. *Rawls v. Central Bucks Joint School Building Authority,* 8 Pa. Commonwealth Ct. 491, 303 A.2d 863 (1973). This is true even where other *de facto* takings have occurred along the path of the particular construction project involved in the case. *Elias v. Department of Transportation,* 25 Pa. Commonwealth Ct. 605, 609-10, 362 A.2d 459, 461 (1976).

The Department argues that there was no substantial deprivation of the Stepplers' use and enjoyment of the property so as to constitute a *de facto* taking. The Department concedes that the Stepplers' property may

---

[6] This case was first argued June 1986 before a panel of this Court. The parties were directed on November 25, 1986 to reargue the case before the court *en banc,* which occurred February 25, 1987.

have suffered a decrease in value because of the Blue Route, but maintains, however, that merely proving a diminution in a property's overall fair market value is insufficient to show a *de facto* taking. We must agree.

Generally, in order to show a *de facto* condemnation of a property, the landowner must show that the pre-condemnation activities of the condemning body either: (1) deprived the owner of the use and enjoyment of his property, or (2) subjected the owner to the loss of the property. *Filbert Limited Partnership Appeal,* 64 Pa. Commonwealth Ct. 605, 630, 441 A.2d 1345, 1357 (1982). *See also Conroy-Prugh Glass Co. v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974).

These general principles were applied to residential property in *Department of Transportation v. Kemp,* 100 Pa. Commonwealth Ct. 436, 515 A.2d 68 (1986), *aff'd per curiam,* Pa. , A.2d (No. 63 E.D. Appeal Dkt. 1987, filed January 19, 1988). In *Kemp,* the Department required a strip of the Kemps' front yard ranging in depth from six and one-half to eighteen feet in order to widen the existing highway. We held that where the owner of a residential property has not lost the use of his property as a residence, no *de facto* taking of the entire property had occurred, notwithstanding the fact that the residence had a reduced market value, unless the unmarketability was the result of the property's inevitable *total* condemnation, such that a cloud would be placed on the property's title, rendering it completely valueless. *Kemp,* 100 Pa. Commonwealth Ct. at 444, 515 A.2d at 73. *See also Department of Transportation v. Smoluk,* 100 Pa. Commonwealth Ct. 422, 514 A.2d 1000 (1986), *aff'd per curiam,* Pa. , A.2d (No. 68 E.D. Appeal Dkt. 1987, filed January 19, 1988). Here, as in *Kemp,* the Stepplers still live in the house, and although the condemnation of a *small part* of the Stepplers' backyard is probably inevitable, the Department's plans never contemplated a

*total* taking of the Stepplers' property. Thus, we must conclude that the trial court's finding that a *de facto* taking of the Stepplers' entire property occurred was not supported by the evidence.

The Stepplers raise two arguments in support of the trial court's order. First, they argue that the Blue Route substantially deprives them of the beneficial use and enjoyment of their property. Whether a particular activity deprives a property owner of the beneficial use and enjoyment of his property, is dependent upon the type of use the owner has given to the property. *Kemp,* 100 Pa. Commonwealth Ct. at 443, 515 A.2d at 72. The beneficial use of a property includes not only its present use, but also all potential uses including its highest and best use. *Visco v. Department of Transportation,* 92 Pa. Commonwealth Ct. 102, 498 A.2d 984 (1985). In the absence of evidence to the contrary, however, the presumption is that the property's present use is the highest and best use. *Id.; see also Shillito v. Metropolitan Edison Co.,* 434 Pa. 172, 252 A.2d 650 (1969). The Stepplers assert that because the Blue Route might be elevated on their property and might generate highway noise, there is sufficient evidence to show a substantial interference with their use and enjoyment of the property. We must disagree.

The highest and best use of the property in this case is a residence and there was absolutely no evidence that the Stepplers have lost the use of the property *as a residence.* And, where there is no substantial deprivation of the property's highest and best use, there can be no *de facto* taking. *Kemp; Visco.* Moreover, neither the elevated Blue Route nor the noise that the road would generate has yet come to pass; therefore, there can be no present *de facto* taking where the harm to be caused by the public inprovement is only at some future time and is purely speculative. Indeed, the Stepplers seem to equate the fact that their house will be less desirable to

live in after construction of the Blue Route, with the exceptional circumstances necessary to prove a *de facto* taking. Merely having a house that is somewhat less desirable to live in does not constitute the type of exceptional circumstance needed to prove a *de facto* taking of an entire residential property. *See, e.g., Department of Transportation v. Myers,* 104 Pa. Commonwealth Ct. 356, 522 A.2d 112 (1987) (odors and flooding caused by Department's widening of road made property uninhabitable); *Compare Westmoreland County Airport Authority Appeal,* 96 Pa. Commonwealth Ct. 306, 507 A.2d 899 (1986) (noise of jet aircraft overflights rendered home uninhabitable) *with Petition of Ramsey,* 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977) (noise of jet aircraft overflights did not render home uninhabitable).

Next, the Stepplers point to the trial court's finding that the property was "unmarketable." Again, however, we must reiterate what we said in *Kemp* that mere difficulty in the marketability of a residence does not substantially deprive property owners of their right to beneficial use and enjoyment, where it is shown that the residence owner can still use his property as a residence and the *whole* property inevitably will not be condemned. *Kemp.*

Moreover, the evidence here does not establish "unmarketability." The testimony of the Department's appraiser, which was found credible by the trial judge, was that the fair market value of the Stepplers' residence was $120,000 *before* the filing of the Blue Route's plans. Although the Stepplers' property was listed by real estate agents for three years, all the listing prices were either above or just slightly below the property's fair market value ($119,500).

The Stepplers are not without remedy. Although they have shown at best a decline in their property's fair

market value, Section 604 of the Code, 26 P.S. §1-604 is applicable here, and provides:

> Any change in fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value.

26 P.S. §1-604. The Stepplers argued below that the remedy provided by Section 604 is uncertain. Absent exceptional circumstances, however, *Conroy-Prugh* indicates that Section 604 is constitutionally sufficient to protect the landowner's rights until the time the ultimate formal condemnation takes place. The mere fact that landowner's remedy may be somewhat less certain does not somehow invalidate the statute. As we stated in *Kemp*, "[w]ithout question, the depreciation and the lack of marketability are compensable injuries to the property which may be recovered as damages resulting from the Department's taking of [part of the property]. *Kemp*, 100 Pa. Commonwealth Ct. at 445, 515 A.2d at 73 (1986).

Having disposed of the case on this ground, we do not pass on the other issues raised by the Department.[7]

Reversed.

## ORDER

The order of the Court of Common Pleas of Delaware County, No. 84-15364, dated May 8, 1985, is hereby reversed.

Judge COLINS dissents.

---

[7] The Department has raised the question of whether there can be a *partial de facto* taking under Section 502(e) of the Code. While this issue is certainly novel, the relief requested by the Stepplers was only for *total* taking of their property, and the direct issue of a partial taking was not placed before us.

PLOT PLAN · COMMONWEALTH · OF · PENNSYLVANIA   DEPARTMENT OF HIGHWAYS

| AREA | ACRES |
|---|---|
| Deed | 1.394 |
| Legal R/W | 0.103 |
| Before | 1.291 |
| Taken for R/W | 0.032 |
| After | 1.259 |

Claim No. _____
Property No. 4
Owner(s) OSCAR STEPPLER + GERMAINE P STEPPLER H/W
Grantor(s) T RICHARD JORDAN | JOSEPHINE LAGERMAN JORDAN   Consideration $ 2.20000
Deed Date APRIL 26,1946   Recording Date JUNE 5,1946   I.R. Stamps $2.75
Book 1542   Page 443   Date Information Obtained JUNE, 1968
Route L R 1010 C-1   County DELAWARE   Township RADNOR
Scale 1"-50'   Right of Way Plan Sheet (s) 23 of 71   Sheet of 124

GANNETT FLEMING CORDDRY & CARPENTER, INC. Engineers, Harrisburg, Pa.