**Pepper GENTER**

v.

**BLAIR COUNTY CONVENTION AND SPORTS FACILITIES AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 7, 2002.

Decided Aug. 14, 2002.

Harvey Pasternack, State College, for appellee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Blair County Convention and Sports Facilities Authority (Authority) appeals from the order of the Court of Common Pleas of Blair County (trial court) that dismissed the Authority's Preliminary Objections to the Amended Petition for Inverse Condemnation, and appointed a Board of Viewers. The trial court held that Pepper Genter (Genter), the aggrieved homeowner, established a *de facto* taking of her residential property under Section 502(e) of the Eminent Domain Code (the Code).[1] We reverse.

Genter is the owner of a single family residence on Sprankle Avenue in Hollidaysburg, Pennsylvania, where she resides. She has resided there for over twenty-two years. Three other residential properties and several building lots are located on Sprankle Avenue. Twenty-two years ago, the area was a low-density residential area surrounded by woods and wetlands, with access by both a private alley and a private gravel lane.

The Authority constructed a Convention Center in close proximity to the Genter property. To accommodate the convention facility, its parking lots and the access roads, the Authority acquired land next to an existing commercial development. The Genter property and that of her neighbors on Sprankle Avenue were not acquired by condemnation. During construction, Sprankle Avenue was reconfigured to replace its connection to Young's Crossing

David P. Andrews, Altoona, for appellant.

1. Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Sess., P.L. 84, *as* *amended,* 26 P.S. § 1–502(e).

Road with a paved road from Logan Boulevard[2] ending in a cul-de-sac.[3] The alley to the rear of the Genter property that provided two-way access from the north and south was closed to permit construction of Convention Boulevard. Convention Boulevard is a "connector" highway between Pennsylvania Route 36 and Pennsylvania Route 220 that serves as an access road to the convention center. Convention Boulevard has been constructed on land adjacent to, but not over, the Genter property.[4]

Because of the Convention Center, Genter filed a Petition for Appointment of a Board of View in accordance with Section 502(e) of the Code. Her petition relied upon five factual averments: (1) During the daytime hours while the construction is in progress, Genter's access to her property is impeded because of open construction ditches; (2) the rural setting of the property has been destroyed by the building project; (3) Genter's enjoyment of the property will be diminished after the project is completed due to noise from the highway; (4) Genter's peaceful and quiet enjoyment of the property has been disrupted by the noise and dust of the construction of the adjacent highway; and (5) the construction of a gas-line trench adjacent to the property will cause the death of mature trees located on Genter's property.[5]

■ In response, the Authority filed preliminary objections in the nature of a demurrer[6] and a request for a hearing on

---

2. Logan Boulevard is a major highway running north to south between Hollidaysburg and Altoona. The Genter property is described as being one and one-half blocks, or several hundred feet to the east of Logan Boulevard. Convention Center Boulevard is a newly constructed road giving access to the convention center from Logan Boulevard, and providing access to the commercial areas and the new residential subdivision, Fox Hollow. It also provides access to the Genter property from Hollidaysburg, the mall shopping areas and the nearby Wal Mart, although the access is through the newly conformed Sprankle Avenue and Logan Boulevard. Clearly, the residential properties on Sprankle Avenue are in very close proximity to an existing commercial district. The trial court characterizes the area accessed by the road in front of the Genter property as "one of this County's fastest growing and congested areas involving shopping plazas, multiple restaurants and professional offices." Adjudication and Order, p. 3. Reproduced Record 199a (R.R. ——).

3. Genter's driveway was paved at Authority's expense to facilitate access to the road from her property, and the road was dedicated to the township for maintenance. The net result, of course, was that access to the properties on Sprankle Avenue was limited to the one, dead-end road in place of the original through two private roads.

4. Testimony by one of Genter's witnesses, a landscape architect, describes Convention Boulevard as wrapping around the Genter property "on the north side and the west side so it actually makes a curve around two sides to the property." R.R. 87a. The Project Manager for the construction, Al Laich, testified that this new access road is a four-lane highway to which the properties on Sprankle Avenue do not have direct access. This access arrangement was confirmed by the testimony of the Sports Authority's real estate appraiser. No part of Genter's property has been taken or condemned by the Authority, and no trees, vegetation or structures on Genter's property have been directly or indirectly damaged by the construction.

5. The trees in issue are not on Genter's property. She testified that she mistakenly believed that they were planted on the property line, but came to realize that they are growing in the public right-of-way. The Project Manager testified that every effort was made to save the trees, including advising all the utilities working in the area to avoid cutting the roots of the trees even if they intruded into the right-of-way.

6. Preliminary objections are the exclusive method under the Code of raising objections to a petition for the appointment of a board of viewers alleging a *de facto* taking. *Lehigh*

the issue of whether a *de facto* taking had occurred. Genter amended her filing and recaptioned it as a Petition for Inverse Condemnation. The Authority filed additional preliminary objections that were substantially identical to the original preliminary objections. After evidentiary hearings on June 21, 2001 and September 21, 2001, by order dated December 12, 2001, the trial court overruled and dismissed the Authority's preliminary objections.[7] The Authority appeals from that Order.

■ The parties agree that the issue in this appeal is whether the Authority has taken Genter's property by inverse condemnation. The Authority asserts that there has been no inverse condemnation of Genter's property and that the trial court erred in reaching that conclusion. Specifically, the Authority contends that the trial court applied the wrong standards to find a *de facto* taking; the Petition for Inverse Condemnation fails to state facts sufficient to demonstrate a *de facto* taking; and the trial court erred by using findings of facts

that are not supported by the record.[8] We agree.

■ Section 502(e) [9] of the Code permits an individual to petition for viewers to seek compensation for an injury to property where no declaration of taking has been filed. A *"de facto* taking" occurs when an entity clothed with the power of eminent domain has, by even a non-appropriative act or activity, substantially deprives an owner of the beneficial use and enjoyment of his property. *Griggs v. County of Allegheny,* 402 Pa. 411, 414, 168 A.2d 123, 124 (1961), *reversed* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), citing *Miller v. City of Beaver Falls,* 368 Pa. 189, 196–197, 82 A.2d 34, 38 (1951); *Conroy–Prugh Glass Company v. Department of Transportation,* 456 Pa. 384, 321 A.2d 598 (1974); *Miller Appeal,* 55 Pa.Cmwlth. 612, 423 A.2d 1354 (1980).

■ In *Jacobs Appeal,* 55 Pa.Cmwlth. 142, 423 A.2d 442 (1980), this Court defined the elements that a property owner must aver and prove to succeed in an inverse condemnation proceeding. First,

*Northampton Airport Authority v. WBF Associates, L.P.,* 728 A.2d 981 (1999).

7. The trial court issued an Adjudication and Order including specific findings of fact and conclusions of law and providing a brief and limited discussion of the rationale for the court's decision.

8. Our scope of review of a trial court's dismissal of preliminary objections to a petition for appointment of a board of viewers is limited to determining whether the trial court's findings are supported by competent evidence in the record, whether the trial court abused its discretion or whether it committed an error of law. *Elser v. Department of Transportation,* 651 A.2d 567 (Pa.Cmwlth.1994), *appeal denied,* 540 Pa. 650, 659 A.2d 988 (1995), citing *Department of Transportation v. Richards,* 124 Pa.Cmwlth. 432, 556 A.2d 510 (1989). This Court in *Elser* noted: "While earlier decisions of this Court set forth the

scope of review in a more restrictive fashion, *Yanssens v. Municipal Authority of Township of Franklin, Beaver County,* 139 Pa.Cmwlth. 624, 591 A.2d 335 (1991), *McGaffic v. Redevelopment Authority of New Castle,* 120 Pa. Cmwlth. 199, 548 A.2d 653 (1988), *appeals denied,* 523 Pa. 644, 645, 565 A.2d 1168, 1169 (1989), the precise scope is that stated here and which shall be applied in all future appeals from trial court decisions dismissing preliminary objections to a petition for the appointment of a board of view." *Elser,* 651 A.2d at 570, n. 4.

9. Section 502(e) provides:

(e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.
26 P.S. § 1–502(e).

he must show that the condemnor has the power to condemn the land under eminent domain procedures.[10] Second, he must show "exceptional circumstances" that have "substantially deprived him of the use and enjoyment of his property." Third, he must show that the damages sustained were the "immediate, necessary and unavoidable consequences of the exercise of the eminent domain power." In a claim of a *de facto* taking, the property owner bears a heavy burden of proof, and "each case turns on its unique factual matrix." *Riedel v. County of Allegheny*, 159 Pa. Cmwlth. 583, 633 A.2d 1325, 1328 (1993).

Here, the trial court found that the construction of the convention center and the access roads has substantially and permanently changed the "setting and atmosphere" of Genter's property so that she can no longer use the property as a "private, secluded and sylvan-dominated residence." Adjudication and Order, R.R. 206a.[11] The trial court determined that the Authority effected a *de facto* taking because the construction had "the same impact as if the property had been removed from its woodland setting and

transplanted into the midst of a heavily trafficked commercial locale having none of the attributes of its original setting"[12] so that Genter "will never be able to use and enjoy the property as she did prior to initiation of construction of the access highway and the convention center." R.R. 209a.

■ These findings of the trial court demonstrate a misunderstanding of the standard for establishing a *de facto* taking under the Code. "Merely having a house that is somewhat less desirable to live in does not constitute the type of exceptional circumstance needed to prove a *de facto* taking of an entire residential property."[13] *Department of Transportation v. Steppler*, 114 Pa.Cmwlth. 300, 542 A.2d 175, 178 (1988).

■ Whether a particular activity deprives a property owner of the beneficial use and enjoyment of his property is dependent upon the type of use the owner has given to the property. *Department of Transportation v. Kemp*, 100 Pa.Cmwlth. 436, 515 A.2d 68, 72 (1986), *aff'd per cu-*

---

10. Although Petitioner also has the burden of showing that the Sports Authority is an entity clothed with the power of eminent domain, it is undisputed that the Sports Authority is such an entity.

11. This change was specifically attributed by the trial court to a substantial change in the ingress and egress to the property as a result of the construction of the access highway; a change from being surrounded by "wooded wetlands," which no longer exist because of the "substantial traffic flow over the highway twenty-for hours each day"; and the limitations of passage to and from Genter's home and the dust, dirt and noise to which she was subjected during the construction of the convention center. R.R. 204a.

12. The Authority contends that these findings are not supported by substantial evidence. *See* note 2, *supra;* see also note 15, *infra.*

13. The seminal case on a residential *de facto* taking is *Griggs*. Because of overhead flights to the Allegheny County Airport thirty feet above the roof of the house, every few minutes, the residents could not talk in person or on the phone; they could not sleep, even with sleeping pills; the noise from the planes caused the windows to rattle and plaster to fall. In addition, the family lived in an extreme fear after they were informed by a representative of the Airlines Pilots Association that an engine failure would leave the pilot "no course but to plow into your house." *Griggs*, 369 U.S. at 87, 82 S.Ct. 531. Because the house was rendered uninhabitable, the U.S. Supreme Court found a *de facto* taking.

We do not say that a residential *de facto* need to involve such extreme circumstances; nevertheless, the "exceptional" circumstances in *Griggs* are far removed from Genter's situation.

*riam,* in *Department of Transportation v. Smoluk,* 517 Pa. 309, 535 A.2d 1051 (1988). In cases involving commercial properties, the loss of value and the inability to rent or sell the property are obviously relevant to whether the property is no longer income-producing and thus whether it has lost its commercial use. *Id. See, e.g., Conroy–Prugh Glass Co., supra.; McCracken v. City of Philadelphia,* 69 Pa. Cmwlth. 492, 451 A.2d 1046 (1982); *Department of Transportation v. Standard Investments Corp.,* 80 Pa.Cmwlth. 649, 472 A.2d 282 (1984), *aff'd per curiam,* 506 Pa. 337, 485 A.2d 392 (1984). The beneficial use of a property includes not only its present use, but also all potential uses including its highest and best use. *Visco v. Department of Transportation,* 92 Pa. Cmwlth. 102, 498 A.2d 984 (1985). In the absence of evidence to the contrary, however, the presumption is that the property's current use is the highest and best use. *Id., see Shillito v. Metropolitan Edison Co.,* 434 Pa. 172, 252 A.2d 650 (1969).

In the present case, it is uncontroverted that the highest and best use of Genter's property is as a residence. There was no evidence that Genter has lost the use of the property *as a residence.*[14]

In *Steppler,* under facts similar to the present case, this Court has specifically addressed the issues presented by a *de facto* taking claim with respect to a residential property. The homeowners in *Steppler* complained that their residence was less desirable to live in after the construction of a highway adjacent to their property. The highway was elevated between two and twenty-five feet above ground by either a viaduct or fill. The Stepplers asserted that the elevated road would increase noise levels, thereby substantially interfering with their use and enjoyment of their property. They further offered evidence that the property would be less readily marketable. This Court explained that, generally, a landowner attempting to prove a *de facto* taking "must show that the pre-condemnation activities of the condemning body either: (1) deprived the owner of the use and enjoyment of his property, or (2) subjected the owner to the loss of the property." *Steppler,* 542 A.2d at 177. (citations omitted). These general principles were confirmed from the earlier cases of *Department of Transportation v. Smoluk,* 100 Pa.Cmwlth. 422, 514 A.2d 1000 (1986) and *Department of Transportation v. Kemp,* 100 Pa.Cmwlth. 436, 515 A.2d 68 (1986), *aff'd per curiam,* 517 Pa. 309, 535 A.2d 1051 (1988). This Court held:.

> ... where the owner of a residential property has not lost the use of his property as a residence, no *de facto* taking of the entire property has occurred, notwithstanding the fact that the residence has a reduced market value, unless the unmarketability was the result of the property's inevitable *total* condemnation, such that a cloud would be placed on the property's title, *rendering it completely valueless.*

*Steppler,* 542 A.2d at 178 (emphasis added).

■ The property owners in *Steppler, Kemp,* and *Smoluk* continued to live in their respective houses, and the condem-

---

**14.** The trial court acknowledged, as a finding of fact, that the only evidence on value of Genter's real estate was presented by the Authority's real estate appraiser who testified that the effect of the construction of the convention center and the highway was to enhance the value of the property as a commercial or business site. The trial court dismisses this fact in its opinion as irrelevant to the fact that Genter has suffered a loss of her enjoyment of her home, and that in order to take advantage of the increased value of the real estate she would be required to sell the property. R.R. 210a.

nor did not intend a taking of the entire property. Thus, relying upon the holdings in *Steppler, Kemp,* and *Smoluk* we overrule the trial court's holding that a *de facto* taking of Genter's residence has occurred. Where it is shown that the owner can still use his property as a residence and the whole property will not be condemned, there is no substantial deprivation of a property's highest and best use. Thus, there can be no *de facto* taking.

 Here, Genter complains about changes to surrounding property that she does not own. These changes are a matter for zoning not eminent domain. Assuming the trial court's findings are supported by substantial evidence, they do not rise to a *de facto* taking. Her home is not uninhabitable; it continues to be used as a residence.

Just as averments about changes in the neighborhood do not state a *de facto* taking cause of action, Genter's other averments are unavailing. They do not state facts of "exceptional circumstances" that "substantially deprive" her of the use and enjoyment of her property.

 Genter's averments that her property will be negatively affected by noise *after* construction is completed, and her averment that trees growing in the public right of way will die at some point in the future are speculative and conjectural and are, therefore, insufficient to establish a *de facto* taking as a matter of law.

*Petition of 1301 Filbert Ltd., Partnership,* 64 Pa.Cmwlth. 605, 441 A.2d 1345 (1982). Because Genter has no ownership rights to the public right of way, no compensable property interest in the trees growing there, Genter's averments regarding the trees and lack of access to the highway are also insufficient to establish a taking.[15] *Tricker v. Pennsylvania Turnpike Commission,* 717 A.2d 1078 (Pa.Cmwlth.1998) (wherein we held that the Turnpike Commission did not effect a *de facto* taking where a landowner lost access to a public road during construction). The Code does not permit any award of damages for the temporary loss of access during construction, even if all access is temporarily lost. *Berk v. Department of Transportation,* 168 Pa.Cmwlth. 560, 651 A.2d 195 (1994); *Truck Terminal Realty Co. v. Department of Transportation,* 486 Pa. 16, 403 A.2d 986 (1979). Finally, Genter's averments regarding noise and dust during the construction project are also insufficient to establish a compensable taking. *Berk, supra.*

We agree with the Authority that the averments in Genter's petition do not establish a *de facto* taking and that the factual findings of the trial court do not support the legal conclusion of a *de facto* taking. Although the Authority makes a compelling case that the factual findings[16] of the trial court are not supported by substantial evidence, it is not necessary for us to decide that issue because even if they

---

**15.** Genter's claims regarding partial loss of access during construction, even if true, are legally insufficient to establish a taking. Evidence presented at the hearing demonstrated that she had reasonable and consistent access to her property throughout the construction, and that extraordinary efforts were made by the Authority to design and construct reasonable permanent access from her property to the public road system. *Brill v. Department of Transportation,* 22 Pa.Cmwlth. 202, 348 A.2d 451 (1975); *Tracy v. Department of Transpor-*

*tation,* 43 Pa.Cmwlth. 218, 402 A.2d 286 (1979).

**16.** The trial court found that the setting had changed from a sylvan one to a commercial one, but this preceded the Authority's action. The center was located in "one of this County's fastest growing and congested areas involving shopping plazas, multiple restaurants, and professional offices." R.R. 199a. Genter's own witness testified that Logan Boulevard, a four-lane state highway, only a few hundred feet from her property, generated traffic and noise Genter heard. A property

were, it would not change the outcome of this appeal.

Genter has failed to aver facts in her petition sufficient to demonstrate a *de facto* taking, and she failed to prove by a fair preponderance of credible testimony that exceptional circumstances have deprived her of the use and enjoyment of her property. The Authority cannot be held liable for a condemnation of her property.

For these reasons, we reverse the trial court.

### ORDER

AND NOW, this 14th day of August, 2002, the order of the Court of Common Pleas of Blair County dated December 12, 2001, in the above-captioned matter is hereby reversed.

sitting a few hundred feet from a four-lane state highway, in one of the County's "fastest growing and congested areas," to which a short access road has been added cannot be described as being "transplanted" to a significantly different locale, as the trial court did.