IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy E. Cava Montgomery : 
County Trust, : 
           Appellant : 
            : 
      v. :   No. 1423 C.D. 2023
            : 
Commonwealth of Pennsylvania, :   Submitted: November 7, 2024
Department of Transportation : 
            : 
Re: Condemnation by the : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
of Right-Of-Way for State : 
Route 663, Section: S02, in the : 
Township of New Hanover : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: August 28, 2025

      Nancy E. Cava Montgomery County Trust (Landowner), through its trustee Joseph Cava, appeals the October 25, 2023 order[1] of the Montgomery County Court of Common Pleas (trial court) sustaining the Department of Transportation's (DOT) preliminary objections (POs) to Landowner's petition for the appointment of

---

[1] The October 25, 2023 order was made final by the trial court for purposes of this appeal by order on October 31, 2023, because the trial court was persuaded that the instant matter involves issues of immediate public importance. *See* 42 Pa.C.S. § 702.1.

a board of viewers pursuant to Section 502(c) of the Eminent Domain Code (Code).[2,][3]  Upon careful review, we reverse and remand.

## I.  Factual and Procedural Background

In the 1970s, Joseph J. Cava (trustee's father), purchased property along State Route 663 in Monroe County, which was leased and operated as a gas station until 2000.  (Trial Court Opinion (Trial Ct. Op.) at 2.)  In 2001, EXXON, the former operator of the gas station, removed the gasoline pumps from the property, and in 2004, Landowner removed the underground gasoline storage tanks.  *Id.*

On September 20, 2019, as part of a road improvement project, DOT filed a declaration of taking (2019 Declaration of Taking)[4] pursuant to the Code, condemning a portion of Landowner's property.  The portion of the parcel covered by the 2019 Declaration of Taking included two of four concrete filling station islands.  **Two additional concrete filling station islands** were located on a portion of the property that was **not included** in the 2019 Declaration of Taking.  While the four concrete islands no longer had gasoline pumps or underground storage tanks associated with them, the concrete islands continued to contain piping and electrical infrastructure necessary for the operation of a gasoline filling station.

DOT's 2019 Declaration of Taking for road improvements permitted the excavation of two of the four concrete islands.  However, in June of 2022, DOT contractors razed all four of the concrete islands, **including the two islands located on the portion of Landowner's property not condemned** by the 2019 Declaration of Taking.  These **two concrete islands were not slated for demolition.** *Id*.  On January 24, 2023, Landowner filed a Petition for a Board of Viewers (Original

---

[2] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 Pa.C.S. §§ 101-1106.

[3] Also before the Court is Landowner's Motion to supplement the record.

[4] DOT's Declaration of Taking was filed at Dkt. No. 2019-22803.

Petition) pursuant to Section 502(a) of the Code[5] with the trial court under the same docket number as the 2019 Declaration of Taking.

The Original Petition alleged that DOT had effected both a *de jure* and *de facto* taking of Landowner's property.[6] (Trial Court Op. at 2.) In that petition, Landowner stated that it was paid $74,000 in direct damages for the *de jure* taking. It stated that this taking was not expected to cause the parcel to lose its grandfathered zoning, the loss of which rendered the gas station's garage and its associated amenities useless. (Reproduced Record (R.R.) 11a-12a.) As a result of DOT's actions, however, taken over two years after the filing of the 2019 Declaration of

---

[5] Section 502(a) provides:

> (a) **Contents of petition**.—A condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers, setting forth:
> (1) A caption designating the condemnee or displaced person as the plaintiff and the condemnor as the defendant.
> (2) The date of the filing of the declaration of taking and whether any preliminary objections have been filed and remain undisposed of.
> (3) In the case of a petition of a condemnee or displaced person, the name of the condemnor.
> (4) The names and addresses of all condemnees, displaced persons and mortgagees known to the petitioner to have an interest in the property acquired and the nature of their interest.
> (5) A brief description of the property acquired.
> (6) A request for the appointment of viewers to ascertain just compensation.

26 Pa.C.S. § 502(a).

[6] "A *de jure* condemnation is one initiated by the condemning body in compliance with all statutory requirements, whereas a *de facto* condemnation occurs outside the legal process when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his or her property." *Captline v. County of Allegheny*, 727 A.2d 169, 171 n.7 (Pa. Cmwlth. 1999).

3

Taking, in destroying the gasoline pump islands on the uncondemned portion of Landowner's Property, the Original Petition alleged DOT had committed an additional *de facto* taking by depriving Landowner of its grandfathered right to use its remaining land to operate a gasoline station. Landowner stated in its Original Petition that it was now seeking no less than $676,000.00 in additional damages.

On February 27, 2023, DOT filed POs challenging Landowner's Original Petition claiming that it did not comply with the requirements of Section 502(a) of the Code relating to the contents of a petition for a board of viewers. DOT's POs requested that the petition be refiled under a separate court term and under a number other than the docket number of the 2019 Declaration of Taking. On March 31, 2023, the trial court sustained DOT's POs and ordered Landowner to refile its petition under a separate docket number. (R.R. at 16a.)

On April 7, 2023, Landowner complied with the trial court's order and filed a second Petition for Appointment of a Board of Viewers (Second Petition) pursuant to Section 502(c) of the Code, 26 Pa.C.S. § 502(c).[7] In this petition,

---

[7] Section 502(c) provides:

> **(c) Condemnation where no declaration of taking has been filed.—**
> (1) An owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) setting forth the factual basis for the petition.
> (2) The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned.
> (3) The court shall enter an order specifying any property interest which has been condemned and the date of the condemnation.

**(Footnote continued on next page…)**

4

Landowner asserted DOT effected a *de facto* taking of its uncondemned property more than two years and nine months after DOT filed its 2019 Declaration of Taking, by removing the two remaining gasoline service station islands located outside of the bounds of the 2019 Declaration of Taking. In order for a property owner to prove that a *de facto* taking has occurred, "he must show exceptional circumstances which have substantially deprived him of the use and enjoyment of his property." *Appeal of Jacobs*, 423 A.2d 442, 443 (Pa. Cmwlth. 1980). Landowner argued that such exceptional circumstances existed here because DOT's razing of the gasoline station islands on its uncondemned land caused Landowner to lose its grandfathered rights to use the property as a gasoline station. While the new zoning ordinance governing the property provided that "[a] nonconforming use, structure or lot . . . may continue except as hereinafter provided," (Original Record (O.R.) at 63), it also stated that "[a] nonconforming building which has been legally condemned shall not be rebuilt nor used except in accordance with the provisions of this chapter." (O.R. at 57.) In sum, Landowner alleged that "[b]y the 2022 taking of the islands at issue, [Landowner's] [p]arcel for the first time lost the grandfathered use theretofore benefiting the remaining [p]arcel of property as a gasoline filling station, which should have remained intact even after the filing of the 2019 Declaration of Taking." *Id.* at 60.

---

(4) A copy of the order and any modification shall be filed by the condemnor in the office of the recorder of deeds of the county in which the property is located and shall be indexed in the deed indices showing the condemnee as a grantor and the condemnor as grantee.

26 Pa.C.S. § 502(c). This Second Petition for a Board of Viewers was filed at Docket Number 2023-06101.

On May 15, 2023, DOT filed POs to the Second Petition pursuant to Section 504(d) of the Code,[8] 26 Pa.C.S. § 504(d). (Supplemental Reproduced Record (S.R.R.) at 8b.) DOT asserted, *inter alia*, that because a declaration of taking had been filed in this case, Landowner's proper remedy under the Code was to request damages for a *de jure* taking only because the damages awarded for the *de jure* taking would include damages for any lost property value relating to the entire property, not only the portion of the property set forth in the 2019 Declaration of Taking. (O.R. at 38-39.) DOT argued that the controlling precedent for this matter was *2800 N. Broad Street, LLC v. Department of Transportation*, 259 A.3d 1022, 1026 (Pa. Cmwlth. 2021), which it asserted held that it is improper for a court to find that a *de facto* taking has occurred if a declaration of taking has been filed. (O.R. at 40.)

---

[8] Section 504(d) of the Code provides:

> **(d) Preliminary Objections.—**
> (1) Any objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the Appointment of viewers.
> (2) Objections to the form of the petition or the appointment or the qualifications of the viewers in any proceeding or to the legal sufficiency or factual basis of a petition filed under Section 502(c) (relating to petition for an appointment of viewers) are waived unless included in preliminary objections.
> (3) An answer with or without new matter may be filed within 20 days of service of preliminary objections, and reply to new matter may be filed within 20 days of service of the answer.
> (4) The court shall determine promptly all preliminary objections and make any orders and decrees as justice requires.
> (5) If an issue of fact is raised, the court shall conduct an evidentiary hearing or order that evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue.

26 Pa.C.S. § 504(d)(1)-(5).

DOT argued that Landowner failed to establish exceptional circumstances that substantially deprived Landowner of the beneficial use and enjoyment of its property as a gas station because the underground gas tanks and gas pumps had been removed and the property was vacant long before DOT filed the 2019 Declaration of Taking. (O.R. at 41.) DOT asserted that [Landowner] had not established the feasibility of its use of the property as a gasoline filling station, (R.R. at 36a), and that Landowner's claim of a *de facto* taking pursuant to 26 Pa.C.S. § 502(c) should be dismissed. (S.R.R. at 11b.)

In response, Landowner argued that *2800 N. Broad Street* was distinguishable because there the condemnee did not present evidence of a separate and distinct taking of property other than the property taken by the declaration of taking, nor did the condemnee allege or establish any exceptional circumstances that substantially deprived it of the beneficial use and enjoyment of its property, other than what occurred by reason of the declaration of taking. (O.R. at 31-32.)

On October 23, 2023, during the time for the scheduled hearing, the court heard argument, but no testimony or documentary evidence was admitted into the record. (Hearing Tr., at 40a.) On October 25, 2023, the trial court filed an order sustaining DOT's POs and dismissing Landowner's claim of a *de facto* taking, holding that "the Landowner may proceed to a board of viewers on the *de jure* taking only, in the matter docketed at No. 2019-22803." (S.R.R. at 1b.)

On November 21, 2023, Landowner filed a notice of appeal of the trial court's order with this Court. On January 18, 2024, the trial court issued an opinion explaining the rationale for its October 25, 2023 order. It stated that "[a]t the hearing, it became apparent that there were no issues of fact related to whether this matter initially arose from a *de jure* taking in September 2019, for which [Landowner] is entitled to just compensation." (Trial Ct. Op. at 3.) Concluding that Landowner's claimed damages for the destruction of the remaining two concrete islands arose from

7

a *de jure* taking initiated by the filing of the 2019 Declaration of Taking, the trial court found that Landowner could not also seek damages for a *de facto* taking.

In reaching this conclusion, the trial court found *2800 N. Broad Street* to be dispositive because it said the Commonwealth Court dealt with the precise same issue raised in the present matter. (Trial Ct. Op. at 4.) The trial court cited the following language:

> Where there is a declaration of taking filed for a *de jure* partial taking, damages are determined by considering both the value of the property actually acquired and the damages to the remaining property. In other words, the *de jure* partial taking of the properties already contemplates damages to the remainder of the property. Condemnee . . . conflate[s] the concept of *de facto* taking with the circumstance in which a government action has rendered one's property valueless. This is a misconception . . . . The difference lies not in the extent of the lost value but in the manner in which the value was lost, *i.e.*, by a declaration of taking or by some other action by an entity which has the power of eminent domain.

*2800 N. Broad Street*, 259 A.3d at 1025. (Trial Ct. Op. at 5.) The trial court said, "[s]tated more succinctly, '[b]ecause Subsection (c) [of Section 502 of the Code] applies only where a declaration of taking has not been filed, Condemnee's request for a declaration of [a] *de facto* taking thereunder was improper and thus, [DOT's] preliminary objections should have been sustained.' *Id.* at 1026." (Trial Ct. Op. at 5.) The trial court concluded DOT's preliminary objections should be sustained, and consequently, it did not consider or discuss whether Landowner had set forth the required elements of a *de facto* taking in its Second Petition.[9]

---

[9] On February 1, 2024, Landowner filed a statement of the record intended to be reproduced which listed parts of the record to which it wished to direct the particular attention of this Court. The statement included three items it wished to include in the record, one of which consisted of an

**(Footnote continued on next page…)**

## II. Issues[10]

On appeal, Landowner argues the trial court erred by concluding that the holding in *2800 N. Broad Street* is dispositive in analyzing its *de facto* taking claim, as this is **not a situation where the *de facto* taking** is alleged to have occurred **as the result or consequence of the *de jure* taking.** Landowner asserts a *de facto* taking occurred when DOT entered Landowner's property in 2022, and in violation of the 2019 Declaration of Taking, exceeded its parameters by razing the two remaining islands not included in the 2019 Declaration of Taking. This included the unauthorized removal of the existing electrical and piping infrastructure within them. (Landowner's Br., at xviii.)

Landowner alleges that a second *de facto* condemnation also occurred at the same time because on December 2, 2021, the municipality in which the property is located rezoned the premises to a new designation that does not allow gasoline filling stations to be operated as of right. *Id.* at 4. So, landowner argues, when DOT unlawfully razed the filling station islands, Landowner lost its grandfathered right to use and enjoy its remaining uncondemned property for its most beneficial use as a gasoline filling station. *Id.*

---

affidavit by Landowner representative Joseph E. Cava dated September 7, 2023. (Exhibit H). On February 12, 2024, DOT filed a motion pursuant to Pa.R.A.P. 123 to strike a portion of Landowner's designation of the contents of the reproduced record.

After careful consideration, we grant DOT's Motion to Strike Exhibit H from the record. We note that on October 23, 2023, the trial court held an evidentiary hearing for the express purpose of creating a record and "to give the respective parties an opportunity to present their arguments." (Trial Ct. Op. at 3.) The affidavit at issue submitted by Landowner's representative was not offered or admitted into evidence during the evidentiary hearing even though the affiant was present at the hearing and available to be subject to cross examination. This affidavit was not relied upon by either the trial court or this Court.

[10] We have restated and reordered the issues for accuracy and clarity.

### III.  Discussion[11]

#### A.  *Legal Principles*

The Code provides that a party that has experienced a *de facto* taking may request a board of viewers to obtain compensation.  26 Pa.C.S. § 502(c).  *See Conroy-Prugh Glass Company v. Department of Transportation*, 321 A.2d 598, 599 (Pa. 1974).  "A '*de facto* taking' occurs when an entity clothed with the power of eminent domain has, by even a non-appropriative act or activity, substantially deprived an owner of the beneficial use and enjoyment of his property."  *Genter v. Blair County Convention and Sports Facilities Authority*, 805 A.2d 51, 56 (Pa. Cmwlth. 2002).

"Whether a particular activity deprives a property owner of the beneficial use and enjoyment of his property is dependent upon the type of use the owner has given to the property."  *Genter*, 805 A.2d at 56 (citations omitted).  As the Court in *Genter* stated, "[i]n cases involving commercial properties, the loss of value and the inability to rent or sell the property are obviously relevant to whether the property is no longer income-producing and thus whether it has lost its commercial use."  *Id.* at 57 (citations omitted).  "The beneficial use of a property includes not only its present use, but also all potential uses including its highest and best use."  *Id.*

A *de facto* condemnation does not require an intention to acquire a property but only that the landowner's injury "is a *direct result of intentional action* by an entity clothed with the power of eminent domain."  *In Re Mountaintop Area Joint Sanitary Authority*, 166 A.3d 553, 562 (Pa. Cmwlth. 2017) (quoting *McGaffic v. City of New Castle*, 74 A.3d 306, 315 (Pa. Cmwlth. 2013) (emphasis in original).

---

[11] "Our [] review in an eminent domain matter is limited to determining whether the trial court abused its discretion, committed an error of law, or whether the findings of the trial court are supported by sufficient evidence."  *R & J Holding Company v. Redevelopment Authority of the County of Montgomery*, 885 A.2d 643, 648 n.4 (Pa. Cmwlth. 2005).

Thus, **all that is necessary for a *de facto* taking to occur is for the loss of use and enjoyment by the landowner to be a direct result of intentional action by an entity incident to its power of eminent domain.**[12]

"There is no bright line test to determine when government action is deemed to result in a *de facto* taking." *Thomas A. McElwee & Son, Inc. v. Southeast Pennsylvania Transportation Authority*, 948 A.2d 762, 777 (Pa. 2008). In addition, "each case turns on its unique factual matrix." *Genter*, 805 A.2d at 56 (quoting *Riedel v. County of Allegheny*, 633 A.2d 1325, 1328 (Pa. Cmwlth. 1993)). This Court has found *de facto* takings in cases in which the land alleged to have been taken was entered onto and activities were undertaken on the subject property by or on behalf of an entity with the power of eminent domain. For example, the Court found a *de facto* taking in *St. Catherine Church v. Mountaintop Sanitary Authority*, 427 A.2d 726 (Pa. Cmwlth. 1981), where a sanitary authority entered several churches' land and constructed sewer lines across them without filing any declaration of taking or otherwise exercising its power of eminent domain.

In *Linde Enterprises, Inc. v. Lackawanna River Basin Sewer Authority*, 911 A.2d 658, 661 (Pa. Cmwlth. 2006), we explained the procedure to be employed when preliminary objections are filed in a *de facto* taking case:

> The trial court must determine first whether, as a matter of law, the averments of the petition for the board of viewers, taken as true, in addition to any stipulated facts, are sufficient to state a cause of action for a [*de facto*] taking.

---

[12] "Generally, where a landowner suffers specific damage to his property as a result of the negligent acts of a party with the power of eminent domain, the proper action lies in trespass." *Pool v. Township of District*, 843 A.2d 422, 424 (Pa. Cmwlth. 2004). "Nevertheless, the two species of action are not mutually exclusive. A judgment in trespass, however, does not bar a subsequent condemnation claim." *In Re Mountaintop Area Joint Sanitary Authority*, 166 A.3d at 561 (quoting *Matter of Condemnation by Urban Redevelopment Authority of Pittsburgh*, 458 A.2d 622, 623 (Pa. Cmwlth. 1983)).

> If not, the preliminary objections must be sustained and the petition dismissed or allowed to be amended. If the averments, taken as true, *might* establish a [*de facto*] taking, the trial court must take evidence by depositions or otherwise [e.g., a hearing], *so that a judicial determination might be made.*

*Id.* (emphasis in original and citation omitted.)

In this case, the trial court did not conduct a hearing; rather, it just heard argument, and did not determine whether Landowner had met the necessary criteria for establishing a *de facto* taking because it believed our decision in *2800 N. Broad Street* was dispositive of this case. (Trial Ct. Op. at 3.) We disagree.

Significantly, in *2800 N. Broad Street*, while the condemnee asserted that DOT's declaration of taking condemning a portion of its properties had also effected a *de facto* taking of the remainder of its properties, there were no separate action taken by DOT involving the uncondemned property and no actual physical damage to the separate portion of the landowner's property **not covered by the declaration of taking.**

Here, unlike in *2800 N. Broad Street*, the alleged *de facto* taking of the two remaining concrete islands exceeded the express provision of the 2019 Declaration of Taking and were not in any way a result of damage to the property pursuant to the Declaration. Instead, two years after the Declaration, DOT entered upon Landowner's land and destroyed the remaining islands. Landowner is **not** claiming, as in *2800 N. Broad Street*, that the ***de jure* taking also resulted in a *de facto* taking of other property**. Rather, Landowner alleges that the damage to its remaining property was caused by a specific and observable action taken by DOT that was completely unrelated to the *de jure* taking of the property identified in the 2019 Declaration of Taking. Accordingly, we find that the trial court erred in relying

12

on *2800 N. Broad Street* to conclude that, as a matter of law, no *de facto* taking occurred here.

As noted, once a property owner has filed a petition for the appointment of viewers alleging a *de facto* taking, the trial court "shall determine whether a condemnation has occurred [.]" 26 Pa.C.S. § 502(c)(2). Because we find that the trial court incorrectly concluded that Landowner's averments were insufficient as a matter of law to state a valid cause of action for a *de facto* taking, we remand to the trial court for a determination regarding whether a *de facto* taking occurred. *Petition of Ramsey*, 342 A.2d 124, 126 (Pa. Cmwlth. 1975); *see also McGowan v. Department of Transportation*, 354 A.2d 11 (Pa. Cmwlth. 1976); *Linde Enterprises*, 911 A.2d at 662 ("[A] case may not be sent to a board of viewers to determine damages until the Court of Common Pleas makes a determination that a taking has occurred."); *see also Department of Transportation v. Berk*, 611 A.2d 349 (Pa. Cmwlth. 1992) (trial court failed to resolve the questions of fact and law with respect to a *de facto* taking and indirectly and improperly delegated its responsibility to the board of viewers).

## IV. Conclusion

For the foregoing reasons, the order of the trial court sustaining DOT's preliminary objections is hereby reversed and remanded. The trial court shall determine, in accordance with this opinion, whether DOT's 2022 razing of the concrete gasoline filling station islands on Landowner's uncondemned property constituted a *de facto* taking. We grant DOT's Motion to Strike Exhibit H from the record.

_____
PATRICIA A. McCULLOUGH, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy E. Cava Montgomery : 
County Trust, : 
              Appellant : 
           : 
           : 
         v. :   No. 1423 C.D. 2023
           : 
Commonwealth of Pennsylvania, : 
Department of Transportation : 
           : 
Re: Condemnation by the : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
of Right-Of-Way for State : 
Route 663, Section: S02, in the : 
Township of New Hanover : 

## *ORDER*

AND NOW, this 28th day of August, 2025, the October 25, 2023 Order of the Court of Common Pleas for Montgomery County is REVERSED and the case is REMANDED to the trial court for it to determine, in accordance with this opinion, whether the Department of Transportation's 2022 razing of the concrete gasoline filling station islands on Landowner's uncondemned property constituted a *de facto* taking. It is further ORDERED that the Department of Transportation's Motion to Strike Exhibit H from the Record is GRANTED.

Jurisdiction is relinquished.

_____
PATRICIA A. McCULLOUGH, Judge